**H. L. MEDLER et al.,
Plaintiffs-Appellants,**

v.

**UNITED STATES of America, BUREAU OF RECLAMATION, DEPARTMENT OF the INTERIOR, Defendant-Appellee.**

No. 77–3585.

United States Court of Appeals,
Ninth Circuit.

April 4, 1980.

Christopher J. Dietzen, Richter, Wimberley & Ericson, Spokane, Wash., for plaintiffs-appellants.

Richard J. Webber, Dept. of Justice, Washington, D. C., for defendant-appellee.

* Of the District of Idaho, sitting by designation.

1. Collective bargaining between the Bureau and power plant operators' union dates back to

Before GOODWIN and FARRIS, Circuit Judges, and TAYLOR, District Judge *.

FRED M. TAYLOR, District Judge:

Plaintiffs-Appellants, power plant operators for the Bonneville Power Administration, brought this action against the United States, defendant-appellee, to establish their right to receive certain statutory percentage adjustments to their base pay for length of service (longevity pay) and for swing and graveyard shift work (differential pay). The district court granted appellee's motion for summary judgment. Appellants have appealed from the district court's judgment.

Appellants are employees of the Department of the Interior's Bureau of Reclamation (Bureau). The Bureau pays these employees on an hourly basis at a wage agreed upon in a collective bargaining agreement between the Bureau and the employees' union.[1] The agreement does not provide for either shift differential pay or longevity pay. The agreement does call for periodic supplementary agreements which set general working conditions and wages as negotiated by the parties.

In 1972, Congress passed the Government Employees—Prevailing Rate Systems Act, Pub.L. No. 92–392, 86 Stat. 564, (codified in 5 U.S.C. §§ 5341–5349). That law mandates that federal prevailing rate employees (hourly employees) have their base pay set at the prevailing rate in their area. It requires payment of shift differential in addition to base pay to prevailing rate employees who work swing or graveyard shifts. It also provides that prevailing rate employees shall receive additional pay for longevity of service with the government. However, the law expressly states that the Act shall not be construed to:

(1) abrogate, modify, or otherwise affect in any way the provisions of any contract in effect on the date of enactment of this

1949. The Bureau and the union entered into the agreement involved in this litigation on December 8, 1970.

**452**

Act pertaining to the wages, the terms and conditions of employment, and other employment benefits, or any of the foregoing matters, for Government prevailing rate employees and resulting from negotiations between Government agencies and organizations of Government employees . . . .

Pub.L. No. 92–392 § 9(b)(1).[2]

Appellants (employees) contend here, as they did in the district court, that Pub.L. No. 92–392 amends their collective bargaining agreement so as to require the Bureau to pay them the statutorily prescribed shift differential and longevity supplements in addition to their negotiated base rate of pay. They argue that § 9(b) of the Act excludes only those prevailing rate employees whose negotiated agreements already include shift differential and longevity pay provisions. Appellants argue that this court should hold that § 9(b) does not exclude them from the statute's coverage and in the alternative, that if § 9(b) does exclude them, it is unconstitutional because it denies them equal protection of the law under the Fifth Amendment of the United States Constitution. We do not agree.

### I.

An interpretation of the exclusionary language contained in § 9(b) is a matter of first impression for this court.[3] The starting point in the interpretation of a statute is of course the language itself. *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978); *E.E.O.C. v. General Telephone Co. of Northwest,* 599 F.2d 322, 328 (9th Cir. 1979). Where no ambiguity is apparent on the face of the statute, there generally is no need to interpret the language by resorting to legislative history. *Church of Scientology v. U.S. Dept. of Justice,* 612 F.2d 417, 421 (9th Cir. 1979). The obvious reason for this is that statutory language is usually the best evidence of congressional intent. *Ibid.*

■ It appears that by the use of very specific, unambiguous language in § 9(b) of the Act, Congress clearly intended to exclude prevailing rate employees whose wages are determined through collective bargaining from coverage under the Act. As previously noted, that section provides that Pub.L. No. 92–392 "shall *not* be construed to (1) abrogate, modify or otherwise affect in *any way* the provisions of *any contract* in effect on the date of enactment of this Act pertaining to the wages, the terms and conditions of employment, and other employment benefits, or any of the

**2.** We note that § 9(b) of Pub.L. No. 92–392 is not codified in 5 U.S.C. § 5343. However, the section does appear in the note following 5 U.S.C. § 5343.

**3.** The only interpretations of the language at issue are found in unreported decisions of the Comptroller General and in the Civil Service Commission's response to one of appellants' interrogatories:

(a) Decision B–184858, Aug. 19, 1976, Comptroller General—Prevailing rate employees covered by a collective bargaining agreement are exempted from statutory pay provisions, including night differentials. However, they can become entitled to the provisions of the law by failing to extend the collective bargaining agreement.

(b) Decision B–188094, Feb. 11, 1977, Comptroller General—Prevailing rate employees serving under collective bargaining agreements are exempted from provisions of P.L. 92–392 and may negotiate wages and employee benefits otherwise covered by P.L. 92–

392, but may not negotiate provisions covered by other statutes and regulations.

(c) Decision B–189782, Feb. 3, 1978, Comptroller General—P.L. 92–392 exempts prevailing rate employees covered by negotiated agreements from the operation of the law, but does not exempt agreement provisions from the operation of other laws or provide independent authorization for agreement provisions requiring expenditure of appropriated funds not authorized by any law.

(d) Answer to Interrogatory 4, Interrogatories Directed to United States Civil Service Commission, filed May 19, 1977—"It is the Commission's opinion that employees subject to an agreement negotiated in accordance with § 9(b) of Public Law 92–392 are entitled to night shift differential pay and/or with-in grade increases only if the negotiated agreement provides for entitlement to night shift differential pay and/or within-grade increases and only to the extent provided by the negotiated agreement."

foregoing matters, for Government prevailing rate employees and resulting from negotiations between Government agencies and organizations of Government employees". (emphasis added)

There is no dispute that the 1970 collective bargaining agreement between the Bureau and the power plant operators' union is a contract between a government agency and an organization of government employees. Nor is there any dispute that longevity and differential pay are employment benefits within the meaning of § 9(b). From our reading of the plain and unequivocal language in § 9(b), we believe the district court was correct in granting appellee's motion for summary judgment. Section 9(b)(1) precludes the appellants from claiming any entitlement to longevity and differential pay as provided in Pub.L. No. 92–392.

Appellants claim that a literal reading of the § 9(b) exclusion produces a result at variance with the purpose of Pub.L. No. 92–392. They propose that in order to harmonize § 9(b) with the purpose of the Act, this court should construe the exclusionary language to exclude only those collective bargaining agreements which already include provisions for longevity and differential pay supplements.

▇▇▇ It is true that courts should construe exceptions to remedial statutes narrowly. *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 110 (9th Cir. 1979). But they should also construe such exceptions sensibly, giving effect to statutory purpose. *Ibid.* When the plain meaning of statutory language produces a result plainly at variance with the policy and purpose of the legislation, courts may follow the purpose rather than the literal words. *Church of Scientology, supra* at 422. However, the plainer the statutory language, the more convincing the contrary legislative history must be before the court follows the purpose over the literal words. *Ibid.*

According to our review of the legislative history of Pub.L. No. 92–392, we discern no convincing contrary legislative history which would justify the construction of

§ 9(b) as proposed by the employees. It is our opinion that a fair and reasonable interpretation of § 9(b)(1) excludes prevailing rate employees subject to collective bargaining agreements from receiving statutory entitlements to longevity and differential pay, and is consistent with the stated purpose of the Act.

As the employees note in their brief, the purpose of Pub.L. No. 92–392 is clear. The House Report provides:

> The major purpose of this legislation is to establish by law an equitable system for fixing and adjusting, from time to time, the rates of pay for prevailing rate employees of the Government of the United States . . .

*Pay System for Government Prevailing Rate Employees*, H.R.Rep. No. 92–339, 92nd Cong., 1st Sess. 5 (1971). The adjustments to which the House Report refers are essentially principled on what Congress has perceived to be: a need to pay all prevailing rate employees, who are working under similar conditions of employment in all agencies within the same local wage area, equal pay for substantially equal work; the need to maintain the level of rates of pay to prevailing rate employees in line with prevailing levels for comparable work within a local wage area; and the need to maintain the level of rates of pay so as to attract and retain qualified prevailing rate employees. 5 U.S.C. § 5341.

The stated purpose and principles of Pub.L. No. 92–392 indicate a congressional intent to provide specific safeguards and inducements to individual prevailing rate employees who do not participate in the collective bargaining process. The House Committee on Post Office and Civil Service indicated such an intent in its report on the bill which, with minor modifications, Congress enacted as Pub.L. No. 92–392.

> The provisions of section 9(b) are directed at those groups of Federal employees whose wages and other terms or benefits of employment are fixed in accordance with the contracts resulting from negotiations between their agencies and employee organizations. A few examples

of such groups are: (1) employees of the Bureau of Reclamation, Department of the Interior, who are involved in the Rio Grande Project in the area of El Paso, Texas; (2) certain employees of the St. Lawrence Seaway Development Corporation under the Department of Transportation; and (3) coal mine inspectors employed by the Bureau of Mines, Department of Interior, in Pittsburgh, Pennsylvania. *It is not this committee's intent to affect, in any way, the status of such contracts or to impair the authority of the parties concerned to renegotiate existing contracts or enter into new agreements.* However, the prevailing rate employees who are now covered by such contracts will be subject to the provisions of this Act when such contracts expire and are not renewed or replaced by new contracts. [emphasis added]

H.R.Rep. No. 92–339, *supra* at 22.

Clearly, prevailing rate employees who are subject to collective bargaining agreements do not require the safeguards and inducements provided in this Act. Presumably, the bargaining union has negotiated an agreement containing terms and conditions of employment which are acceptable to its members. The fact that the 1970 collective bargaining agreement and any subsequent supplemental agreements negotiated on behalf of these appellants do not contain provisions for longevity and differential pay may indeed be unfortunate. But the employees accepted those binding agreements without any provision for longevity and differential pay. They cannot now claim that they are entitled to more than is provided for in their contract. To allow such relief is contrary to the very philosophy and spirit of collective bargaining. If the employees feel that longevity and differential pay should be a part of the terms and conditions of their employment, collective bargaining is the vehicle by which to obtain such additional pay. Alternatively, the employees are free to allow their present agreement to expire without negotiating new contracts, thus subjecting them to the provisions of Pub.L. No. 92–392. *See* H.R.Rep. No. 92–339, *supra.* Had this case involved a congressional enactment which deprived prevailing rate employees of certain benefits, it seems improbable that employees, subject to a collective bargaining agreement, would argue that such a law amended their agreement to deprive them of a benefit for which they had contracted.

## II.

Lastly, appellants argue that their exclusion from the provisions of the Act denies them equal protection of the laws under the Fifth Amendment of the United States Constitution. This argument is without merit.

■ It is true that the Fifth Amendment protects federal employees from arbitrary and discriminatory classifications. *See Richardson v. Belcher,* 404 U.S. 78, 80, 92 S.Ct. 254, 256, 30 L.Ed.2d 231 (1971). If, however, the goals sought are legitimate and the classification has some "reasonable basis", the classification does not deny equal protection. *Califano v. Aznavorian,* 439 U.S. 170, 174–75, 99 S.Ct. 471 (1978); *Richardson, supra,* 404 U.S. at 84, 92 S.Ct. at 258.

■ As previously noted, the purpose of Pub.L. No. 92–392 is to provide federal prevailing rate employees with a permanent statutory compensation system. The purpose of the exclusion contained in § 9(b) of the Act, as both the plain language of that section and the legislative history of the Act indicate, is to protect and preserve the option of collective bargaining. Congress intended to, and clearly did, retain the option of negotiating the terms and conditions of employment independent of Pub.L. No. 92–392. The purpose of the Act is legitimate, and the exclusion contained in § 9(b) is reasonable. Section 9(b) does not suffer from any constitutional infirmity.

The judgment of the district court is AFFIRMED.