880 F.2d 1163
 131 L.R.R.M. (BNA) 3111
 UNITED STATES DEPARTMENT OF ENERGY, Western Area Power
Administration, Golden, Colorado, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
International Brotherhood of Electrical Workers, AFL-CIO,
Local 640, 1245, 1759, 1959 and 2159, Amicus Curiae.
 No. 86-2414.
 United States Court of Appeals,
Tenth Circuit.
 July 19, 1989.
 
 Katherine S. Gruenheck, Dept. of Justice (Richard K. Willard, Asst. Atty. Gen., and William Kanter, Dept. of Justice, with her on the briefs), Washington, D.C., for petitioner.
 Robert J. Englehart, Federal Labor Relations Authority (Ruth E. Peters, Sol., William E. Persina, Deputy Sol., and Arthur A. Horowitz, Associate Sol., with him on the brief), Washington, D.C., for respondent.
 Susan J. Tyburski and Donald P. MacDonald of Hornbein, MacDonald, & Fattor, P.C., and Elihu Leifer of Sherman, Dunn, Cohen, Leifer & Counts, for amicus curiae.
 Before SEYMOUR and EBEL, Circuit Judges, and RUSSELL, District Judge.*
 EBEL, Circuit Judge.
 
 
 1
 This is an appeal from a determination by the Federal Labor Relations Authority (the "FLRA"). Petitioner, Western Area Power Administration ("WAPA"), seeks to have us set aside the FLRA's decision that WAPA committed unfair labor practices by refusing to bargain over wages with certain supervisors within a bargaining unit recognized by the FLRA. Because we find that the FLRA improperly included the supervisors in the bargaining unit, we reverse.
 
 I. BACKGROUND
 
 2
 The pertinent facts underlying this appeal are not in dispute. On October 1, 1977, certain employees who were involved in the marketing and transmission of electrical power generated at federal power plants throughout a 15-state area in the western part of the United States were transferred from the Department of Interior's Bureau of Reclamation to WAPA, an agency within the newly created Department of Energy. At the Bureau of Reclamation, those employees had been in six different bargaining units corresponding to six different sub-elements within the Bureau. The bargaining units were "mixed" units consisting of supervisory and non-supervisory employees, and they were represented by the International Brotherhood of Electrical Workers (the "IBEW"). Among the transferred employees were three levels of foremen, classified as Foremen I, II, and III.
 
 
 3
 In October 1978, WAPA filed a representation petition with the FLRA, seeking a clarification of the appropriate bargaining unit for the employees transferred from the Bureau of Reclamation. WAPA argued that the appropriate bargaining unit was a single activity-wide unit and that the three levels of foremen should be excluded from that unit. Although the FLRA agreed with WAPA that the bargaining unit should be a single activity-wide unit, it held that the unit should include the three levels of foremen. Department of Energy, Western Area Power Administration, 3 F.L.R.A. 76 (1980) ("Wapa I ").
 
 
 4
 Because the evidence in the record was insufficient, the FLRA did not decide whether the foremen in fact were supervisors. But the FLRA held that regardless of their supervisory status, the historical inclusion of the foremen in bargaining units with non-supervisory employees justified inclusion of the foremen within the bargaining unit at WAPA in order to avoid "frustrat[ing] the long history of stable and effective collective bargaining." Id. at 80.[1] The FLRA noted that the foremen were included in units with non-supervisory employees since before 1962 and that their wage rates were negotiated by the union and the Bureau of Reclamation in the same manner as the wage rates of other employees.
 
 
 5
 The FLRA relied on Section 704 of the Civil Service and Reform Act of 1978, 92 Stat. 1218, 5 U.S.C. Sec. 5343 note, and its legislative history, as evidence of Congress' approval of those bargaining practices. Id. at 80-81. It found that the employees at issue are "prevailing rate employees" covered by Section 704 and, as such, could be grouped into mixed bargaining units.[2]
 
 
 6
 The FLRA also held that WAPA was not a successor agency to the Bureau of Reclamation and, therefore, an election would be required to decide the issue of representation of WAPA employees. WAPA requested and was denied reconsideration of the decision to include foremen in the bargaining unit.
 
 
 7
 About one month after the decision in WAPA I, WAPA reclassified the Foreman II and III positions as "Supervisory Craftsmen" positions. Shortly thereafter, a representation election was held and the WAPA employees selected the IBEW as the exclusive representative of all WAPA prevailing rate employees. The Regional Director then issued a Certification of Representation on July 15, 1980, certifying the IBEW as the exclusive representative of the bargaining unit. On that day, WAPA filed a unit clarification petition, requesting the FLRA to make a determination of the supervisory status of the Foremen I, II and III positions and seeking a declaration that the Supervisory Craftsmen were not included in the certified bargaining unit.
 
 
 8
 The Regional Director dismissed WAPA's petition, finding that the employees that had been reclassified were covered by the FLRA's earlier decision. WAPA appealed the dismissal of the petition to the FLRA, which denied review. Department of Energy, Western Area Power Administration, Case No. 7-CU-24 (February 17, 1981) ("WAPA II ").
 
 
 9
 WAPA then refused to negotiate with regard to wages for the employees it had classified as "Supervisory Craftsmen" and it refused to recognize them as members of the bargaining unit. The IBEW filed an unfair labor practice charge, and the FLRA's General Counsel issued an unfair labor practice complaint against WAPA.[3] An administrative law judge ("ALJ") determined that WAPA was committing unfair labor practices in violation of 5 U.S.C. Sec. 7116(a)(1) and (5). Although the ALJ agreed with WAPA that the Supervisory Craftsmen were "supervisors" under the relevant definitions, he held that they could be included in a mixed bargaining unit of supervisors and non-supervisors pursuant to Section 9(b) of the Prevailing Rate Systems Act and Section 704 of the Civil Service Reform Act. (August 4, 1982 ALJ Decision at pp. 34-39.) In support of this holding, the ALJ noted that mixed units of prevailing rate employees had existed regularly since at least 1969 and were condoned by Executive Orders 10988 and 11491. Id. at 32-34.
 
 
 10
 The FLRA upheld the ALJ's decision, holding that WAPA's refusal to negotiate with regard to the wages of the Supervisory Craftsmen and its refusal to recognize the Supervisory Craftsmen as part of the bargaining unit constituted unfair labor practices. Department of Energy, Western Area Power Administration, 22 F.L.R.A. No. 86 (July 29, 1986). The FLRA found that the duties of the reclassified employees had not changed to such an extent as to justify ignoring its previous decisions in WAPA I and WAPA II. As part of its remedial order, the FLRA ordered WAPA to apply the terms of any agreements negotiated between WAPA and the IBEW to the incumbent Supervisory Craftsmen and, wherever possible, to apply such terms retroactively to the date of the unlawful exclusion from the unit. It also ordered WAPA to negotiate in good faith upon request concerning rates of pay for Supervisory Craftsmen and to apply whatever agreement is reached retroactively to 1982. WAPA filed a timely appeal in this court pursuant to 5 U.S.C. Sec. 7123.
 
 II. DISCUSSION
 
 11
 The issue on appeal is whether the FLRA properly concluded that the reclassified supervisory employees are entitled to be included within a mixed bargaining unit of supervisory and non-supervisory employees. If so, WAPA's refusal to recognize them as part of the bargaining unit and its refusal to bargain as to their wages would constitute unfair labor practices. Because we find that the FLRA improperly included the supervisory employees in the bargaining unit, we reverse.
 
 Standard of Review
 
 12
 Our standard of review of the FLRA's decision is governed by the Administrative Procedure Act, 5 U.S.C. Sec. 706. See 5 U.S.C. Sec. 7123(c). Under Section 706 we must uphold the FLRA's decision unless we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. Sec. 706(2)(A), (C).
 
 
 13
 Because of its expertise, when the FLRA is interpreting federal labor relations law, it "is entitled to considerable deference." American Federation of Government Employees v. F.L.R.A., 744 F.2d 73, 75 (10th Cir.1984) (quoting Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983)). Notwithstanding this deference, the Supreme Court has made it clear that reviewing courts are not to "rubber-stamp" administrative decisions that are inconsistent with the statutory mandate or legislative intent. FLRA v. Aberdeen Proving Ground, 485 U.S. 409, 108 S.Ct. 1261, 1263, 99 L.Ed.2d 470 (1988); Bureau of Alcohol, Tobacco and Firearms, 464 U.S. at 97, 104 S.Ct. at 444. Furthermore, the reviewing court is to "decide all relevant questions of law [and] interpret constitutional and statutory provisions." 5 U.S.C. Sec. 706.
 
 
 14
 In addition, although the FLRA should be accorded special deference when interpreting the laws that it is charged with administering, much of the controversy here focuses on the proper interpretation of Section 704 of the Civil Service Reform Act, which is set forth as a note to Section 5343 of the Prevailing Rate Systems Act. See 5 U.S.C. Sec. 5343 note. That section is not part of the Federal Service Labor-Management Relations Statute, 5 U.S.C. Secs. 7101-7135, which the FLRA is charged with interpreting.[4] Therefore, special deference to the FLRA's interpretation of Section 5343 is not required. See Tsosie v. Califano, 651 F.2d 719, 722 (10th Cir.1981); Dept. of the Treasury v. F.L.R.A., 837 F.2d 1163, 1167 (D.C.Cir.1988); Dept. of the Navy v. F.L.R.A., 836 F.2d 1409, 1410 (3d Cir.1988); Nebraska Military Dept. v. F.L.R.A., 705 F.2d 945, 948 (8th Cir.1983).
 
 
 15
 Determination of Appropriate Bargaining Units
 
 
 16
 The Federal Service Labor-Management Relations Statute ("the Statute"), set forth in Chapter 71 of the Civil Service Reform Act of 1978, 5 U.S.C. Secs. 7101-7135, codifies the collective bargaining rights of federal employees. The Statute also established the FLRA with functions similar to the National Labor Relations Board ("NLRB") in the private sector. See 5 U.S.C. Secs. 7104, 7105.
 
 
 17
 One of the FLRA's functions is to determine the appropriate bargaining units for representation of federal employees by labor organizations. 5 U.S.C. Sec. 7112. Supervisors are prohibited from being included in such units, unless their inclusion is expressly authorized by Sec. 7135(a)(2). See 5 U.S.C. Sec. 7112(b)(1). Furthermore, supervisors are excluded from the definition of "employee" in the Statute and therefore are not entitled to the rights of collective bargaining granted to other federal employees. 5 U.S.C. Sec. 7103(a)(2)(B)(iii).[5]
 
 
 18
 There is no real dispute that the Supervisory Craftsmen at issue are supervisors for purposes of the Statute. "Supervisor" is defined under the Statute as:
 
 
 19
 ... an individual employed by an agency having authority in the interest of the agency to hire, direct, assign, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjust their grievances, or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in nature but requires the consistent exercise of independent judgment....
 
 
 20
 5 U.S.C. Sec. 7103(a)(10). Although the FLRA failed to determine the supervisory status of the foremen in its unit determination, in its unfair labor practice decision it affirmed the ALJ's finding that the foremen were supervisors.
 
 
 21
 Therefore, in order for the bargaining unit in this case to be appropriate, an exception to the prohibition in Section 7112 must be found. On its face, Section 7112 indicates that the only exception is to be found in Section 7135(a)(2). The FLRA argues that an additional exception is contained in Section 704 of the Civil Service Reform Act, set forth at 5 U.S.C. Sec. 5343 note.
 
 Section 7135(a)(2)
 Section 7135(a) provides:
 
 22
 (a) Nothing contained in this chapter shall preclude--
 
 
 23
 (1) The renewal or continuation of an exclusive recognition, certification of an exclusive representative, or a lawful agreement between an agency and an exclusive representative of its employees, which is entered into before the effective date of this chapter; or
 
 
 24
 (2) the renewal, continuation, or initial according of recognition for units of management officials or supervisors represented by labor organizations which historically or traditionally represent management officials or supervisors in private industry and which hold exclusive recognition for units of such officials or supervisors in any agency on the effective date of this chapter.[6]
 
 
 25
 That provision allows for recognition of "units of management officials or supervisors." The plain meaning of the words "units of" indicates that Congress in this provision intended only to allow for exclusive units of supervisors, not mixed units of supervisors and subordinate employees. "Of" in the phrase "units of ... supervisors" indicates that "supervisors" is the whole set and is limited by the word "units." See Webster's Third New International Dictionary at 1565 (Unabridged 1986). If Congress had wanted to allow mixed units of supervisors and non-supervisors, it logically would have used the word "including" or the word "containing" instead of the word "of," or it specifically could have referred to mixed units.[7] The legislative history tracks the language of the statute, using the same phrase "units of." See H.R.Rep. No. 95-1403, 95th Cong., 2d Sess., p. 60 (1978). Therefore, we conclude that 5 U.S.C. Sec. 7135(a)(2) allows the FLRA to recognize only exclusive units of supervisors, not mixed units.[8]
 
 
 26
 Our conclusion is supported by the general reluctance in labor law of establishing mixed units of supervisors and non-supervisory employees. That reluctance is a result of the inherent problems of conflict of interest and divided loyalties associated with mixed units. See generally N.L.R.B. v. Yeshiva University, 444 U.S. 672, 689-90, 100 S.Ct. 856, 865-66, 63 L.Ed.2d 115 (1980); Florida Power & Light Co. v. International Bhd. of Electrical Workers, 417 U.S. 790, 808-12, 94 S.Ct. 2737, 2746-48, 41 L.Ed.2d 477 (1974); Beasley v. Food Fair of North Carolina, 416 U.S. 653, 661-62, 94 S.Ct. 2023, 2027-28, 40 L.Ed.2d 443 (1974); Comment, The Role of Supervisors in Employee Unions, 40 Chi.L.Rev. 185, 200-04 (1972-73).
 
 
 27
 On its face, Section 7112 indicates that Section 7135(a)(2) is the only exception to the prohibition against the inclusion of supervisors in bargaining units. That conclusion is supported by the legislative history of Section 7135(a)(2). For example, the House Report to section 7135(a)(2) indicates that supervisors can be recognized as a bargaining unit only if Section 7135(a)(2) is met:
 
 
 28
 Section [7135](a)(2) provides for the renewal, continuation, or initial according of recognition for units of management officials or supervisors represented by labor organizations which historically or traditionally represent management officials or supervisors in private industry, and which hold exclusive recognition for units of such officials or supervisors in any agency on the effective date of this amended chapter. Otherwise, no management official or supervisor as defined under section 7103 of this chapter may be a member of an appropriate unit.
 
 
 29
 H.R.Rep. No. 95-1403, 95th Cong., 2d Sess., p. 60 (1978) (emphasis added).
 
 Section 704
 
 30
 The FLRA argues that notwithstanding the prohibition in 5 U.S.C. Sec. 7112 against bargaining units with supervisors, Section 704 of the Civil Service Reform Act preserves the right of certain prevailing rate employees to bargain as part of mixed bargaining units, thereby providing an additional exception independent of Section 7135(a)(2).[9]
 
 
 31
 Section 704 of the Civil Service Reform Act of 1978, set forth as a note to 5 U.S.C. Sec. 5343 in the Prevailing Rate Systems Act, provides in pertinent part:
 
 
 32
 (a) Those terms and conditions of employment and other employment benefits with respect to Government prevailing rate employees to whom section 9(b) of Public Law 92-392 ... applies which were the subject of negotiation in accordance with prevailing rates and practices prior to August 19, 1972, shall be negotiated on and after the date of the enactment of this Act [Oct. 13, 1978] in accordance with the provisions of section 9(b) of Public Law 92-392 without regard to any provision of chapter 71 of title 5 ... to the extent that any such provision is inconsistent with this paragraph.
 
 
 33
 (b) The pay and pay practices relating to employees referred to in paragraph (1) of this subsection shall be negotiated in accordance with prevailing rates and pay practices without regard to any provision of--
 
 
 34
 (A) chapter 71 of title 5 ... to the extent that any such provision is inconsistent with this paragraph....
 
 
 35
 Section 704 applies only to "prevailing rate" employees. Federal prevailing rate employees are a category of federal workers whose hourly wages are not fixed by the federal General Schedule. Rather, their wages are calculated on the basis of wages prevailing in the industry in which the employees work. "Prevailing rate employee" is defined as:
 
 
 36
 ... an individual employed in or under an agency in a recognized trade or craft, or other skilled mechanical craft, or in an unskilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a supervisor, in a position having trade, craft, or laboring experience and knowledge as the paramount requirement....
 
 
 37
 5 U.S.C. Sec. 5342(a)(2)(A). The FLRA has determined, and it is not disputed, that the Supervisory Craftsmen at issue fall within the above definition.
 
 
 38
 By its terms, Section 704 confers rights only on employees to whom Section 9(b) of the Prevailing Rate Systems Act applies. Section 9(b) provides:
 
 
 39
 The amendments made by this [Prevailing Rate Systems] Act ... shall not be construed to--
 
 
 40
 (1) abrogate, modify, or otherwise affect in any way the provisions of any contract in effect on the date of enactment of this act [Aug. 19, 1972] pertaining to the wages, the terms and conditions of employment, and other employment benefits, or any of the foregoing matters, for Government prevailing rate employees and resulting from negotiations between Government agencies and organizations of Government employees;
 
 
 41
 (2) nullify, curtail, or otherwise impair in any way the right of any party to such contract to enter into negotiations after the date of enactment of this Act [Aug. 19, 1972] for the renewal, extension, modification, or improvement of the provisions of such contract or for the replacement of such contract with a new contract;
 
 
 42
 (3) nullify, change, or otherwise affect in any way after such date of enactment [Aug. 19, 1972] any agreement, arrangement, or understanding in effect on such date [Aug. 19, 1972] with respect to the various items of subject matter of the negotiations on which any such contract in effect on such date is based or prevent the inclusion of such items of subject matter in connection with the renegotiation of any such contract, or the replacement of such contract with a new contract, after such date. (Emphasis added.)
 
 
 43
 There is no dispute that the Foremen II and III positions at issue in this case were, on August 19, 1972, covered by a contract to which Section 9(b) applied. Therefore, it is clear that the employees at issue are entitled to the application of Section 704.
 
 
 44
 The FLRA stresses that Section 704 applies "without regard to any provision of chapter 71 of title 5 ... to the extent that any such provision is inconsistent with this paragraph." It argues that this language trumps the prohibition on supervisors in Section 7112 and therefore allows the FLRA to recognize certain mixed bargaining units. Because we do not find the prohibition on supervisors in Chapter 71 to be inconsistent with Section 704, we disagree.
 
 
 45
 Neither Section 704 nor Section 9(b) explicitly authorizes mixed bargaining units. Section 704 preserves the negotiability of "terms and conditions of employment and other employment benefits" and "pay and pay practices" that were the subject of negotiation prior to August 19, 1972, but says nothing about preserving bargaining units. Section 9(b) merely protects certain collective bargaining contracts and the rights of parties to renegotiate them from the effect of the Prevailing Rate Systems Act; it does not provide an exception to the prohibition of supervisors in bargaining units contained in the Civil Service Reform Act.
 
 
 46
 The FLRA first argues that the scope of the bargaining unit is included within the phrase "terms and conditions of employment" in Section 704. We find this argument to be very questionable. As a logical matter, the scope of the bargaining unit appears to be a prior issue to be resolved before negotiation regarding the terms of employment can occur.
 
 
 47
 Some guidance is provided by a definition of "conditions of employment," which is set forth at 5 U.S.C. Sec. 7103(a)(14):
 
 
 48
 "conditions of employment" means personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions, except that such term does not include policies, practices, and matters--(A) relating to political activities prohibited under subchapter III of chapter 73 of this title; (B) relating to the classification of any position; or (C) to the extent such matters are specifically provided for by Federal statute....
 
 
 49
 (Emphasis added.) It is doubtful that the scope of the bargaining unit is a "personnel polic[y], practice[ ], [or] matter[ ]" within the definition. Furthermore, unit determination may be precluded under Sec. 7103(a)(14) from being a condition of employment because it is specifically provided for by federal statute. Section 7112(a)(1) expressly states that the Federal Labor Relations Authority "shall determine the appropriateness of any unit." 5 U.S.C. Sec. 7112(a)(1).[10]
 
 
 50
 On the other hand, although it is not entirely clear from the record, it appears that the scope of the bargaining unit was a subject of negotiation between the IBEW and the Board of Reclamation prior to 1972. See Amicus Br. at 19; Department of the Interior, Bureau of Reclamation, Yuma Projects Office, A/SLMR No. 1151 (1978). Thus, the policy behind Section 704, which purports to preserve historical subjects of negotiation, would appear to be applicable to negotiations regarding the appropriate bargaining unit.
 
 
 51
 However, regardless of whether Section 704 applies to the subject of unit determination, we find that Section 704 does not support the ruling by the FLRA that the Supervisory Craftsmen are part of the bargaining unit despite WAPA's lack of consent to their inclusion. Section 704, in conjunction with Section 9(b), does not establish any vested right in the supervisors to be part of a bargaining unit. Rather, it merely preserves the negotiability of historical subjects of negotiation. See Columbia Power Trades Council v. United States Dept. of Energy, 671 F.2d 325, 328 (9th Cir.1982) ("Sec. 704 was aimed at any inconsistency in provisions of the [Civil Service Reform] Act which would limit the areas about which these [federal prevailing rate] employees could collectively bargain"). Therefore, even if the scope of the bargaining unit is a permissible subject of negotiation covered by Section 704, WAPA is under no obligation to agree to a mixed unit. At most, Section 704 authorizes mixed units if WAPA consents.[11] The word "negotiation" presupposes that one side does not have to accept the subject of the negotiation. Here, WAPA has not consented to a bargaining unit that includes Supervisory Craftsmen.
 
 
 52
 Although the record does indicate that the IBEW historically has represented mixed bargaining units, it has done so by negotiated agreement. See Department of the Interior, Bureau of Reclamation, Yuma Projects Office, A/SLMR No. 1151 (1978). In fact, the IBEW, in its amicus brief, admits that "the current bargaining unit was originally established by mutual agreement." (Amicus Br. at 19; emphasis added.) Also, the administrative law judge in this case specifically found that the Bureau of Reclamation "voluntarily bargained" with mixed units. (ALJ's Decision at pp. 32-33.) The FLRA has not explained how a previously voluntary bargaining relationship has been converted into a vested right for these supervisory employees to be included in a particular bargaining unit when one party, WAPA, does not agree.
 
 
 53
 Legislative History of Section 704 and Section 9(b)
 
 
 54
 The FLRA contends that the legislative history of Sections 704 and 9(b) reveals an intent to preserve mixed bargaining units. The FLRA largely relies on comments by Representative Ford, who introduced the bill containing Section 704 in Congress. During the floor debates, Representative Ford stated that the section was "intended to preserve the scope of collective bargaining heretofore enjoyed by certain trade and craft employees." 124 Cong.Rec. at 25722 (Aug. 11, 1978). He explained that the provision was necessary because of two rulings by the Comptroller General that had invalidated collective bargaining provisions relating to overtime pay. Representative Ford said that the effect of the amendment would be to overrule the Comptroller General's decisions by "specifically authoriz[ing] the continuation of prior collective bargaining practices" and would allow the covered employees "to continue to negotiate their terms and conditions of employment in accordance with the prevailing practice principle." He stressed that he did "not intend to expand nor contract the scope of bargaining that existed prior to the Comptroller General decisions." He also noted that the historical negotiation of wages, pay practices, and other practices in accordance with the prevailing practice principle had "produced some of the most stable and effective collective bargaining in the history of public employee relations." Id.
 
 
 55
 The House Report and the House Conference Report contain similar statements. The House Report explained that Section 704 was:
 
 
 56
 ... intended to preserve the existing right of certain Federal prevailing rate employees to negotiate terms and conditions of employment. The committee intends that this subsection preserve unchanged the scope and substance of this collective bargaining relationship between the employees' representatives and the agencies involved.
 
 
 57
 The Conference Report states, in pertinent part:
 
 
 58
 Section of the House bill provides certain savings clauses for employees principally in agencies under the Department of the Interior and the Department of Energy who have traditionally negotiated contracts in accordance with prevailing rates in the private sector of the economy and who were subject to the savings clauses prescribed in section 9(b) of Public Law 92-392, enacted August 19, 1972.... [Section 704] overrules the decision of the Comptroller General in cases number B-L89782 [sic] (Feb. 3, 1978) and B-L9L520 [sic] (June 6, 1978) ... This section also provides specific statutory authorization for the negotiation of wages, terms and conditions of employment and other employment benefits traditionally negotiated by these employees in accordance with prevailing practices in the private sector of the economy.
 
 
 59
 H.Conf.Rep. 95-1717, reprinted in 1978 U.S.Code Cong. and Ad.News at 2723, 2893.
 
 
 60
 The FLRA points to the statements by Representative Ford and in the House Reports that stress that Section 704 was intended to preserve the scope of prior collective bargaining, and it argues that those statements are evidence of an intent to give employees the right to remain in mixed bargaining units. We disagree. We interpret those statements to mean that the subject matter of prior collective bargaining was to be protected. Nothing in the legislative history even mentions preserving certain bargaining units. More important, the thrust of that legislative history is that Section 704 was designed to preserve for the parties the right to negotiate about traditional subjects; nowhere does it purport to give any party a vested right to preserve an historic benefit once a contract expires if the other party is unwilling to agree to extend that benefit.[12]
 
 
 61
 The FLRA also relies on Representative Ford's statements about labor stability. It maintains that to "disrupt" the historical inclusion of Foremen I, II, and III with other employees in a single bargaining unit will frustrate what Representative Ford described as a long history of "stable and effective collective bargaining." Our reading of Representative Ford's statements indicates that the FLRA ignored the context of those remarks. He stated:
 
 
 62
 In the past, these employees have negotiated wages, pay practices, and other practices in accordance with the prevailing practice principle. This has produced some of the most stable and effective collective bargaining in the history of public employee labor relations.
 
 
 63
 124 Cong.Rec. at 25722 (emphasis added). Representative Ford was plainly saying that the historic negotiation of wages, pay practices, and similar issues, in accordance with the prevailing practice principle, is what fostered labor stability. Nowhere in his comments does he refer to mixed bargaining units or even imply that particular bargaining units should be preserved.
 
 
 64
 As indicated in the legislative history quoted above, Section 704 was enacted largely in response to two Comptroller General decisions interpreting Section 9(b). See B-189782 (Feb. 3, 1978) at 57 Comp.Gen. 259 (1978); B-191520 (June 6, 1978). Those decisions had invalidated certain collective bargaining agreements regarding overtime, holding that although Section 9(b) exempted certain bargaining agreements from the provisions of the Prevailing Rate Systems Act, it did not exempt them from the operation of other laws. Section 704 effectively overruled those decisions by establishing a right to negotiate historical subjects of negotiation. That history buttresses our conclusion that Section 704 was aimed at protecting the ability of employees to negotiate about subject matters about which they had previously negotiated, such as overtime. It does not suggest that Congress intended to give employees a right to mixed bargaining units.
 
 
 65
 The legislative history of Section 9(b) also fails to mention the preservation of particular bargaining units. For example, the House Committee Report to Section 9(b) stated:
 
 
 66
 The provisions of section 9(b) are directed to those groups of Federal employees whose wages and other terms or benefits of employment are fixed in accordance with contracts resulting from negotiations between their agencies and employee organizations.... It is not the committee's intent to affect, in any way, the status of such contracts or to impair the authority of the parties concerned to renegotiate existing contracts or enter into new agreements.
 
 
 67
 H.R.Rep. No. 339, 92d Cong., 1st Sess. 22 (1971).
 
 
 68
 That legislative history indicates that Section 9(b) was intended to protect the ability of employees and agencies to negotiate collective bargaining contracts as they had in the past. See also Medler v. United States Bureau of Reclamation, 616 F.2d 450, 454 (9th Cir.1980) (the purpose of Section 9(b) is to "retain the option of negotiating the terms and conditions of employment"). As noted above, the employees had no vested right to a mixed unit; rather, mixed bargaining units were allowed only by mutual agreement of the union and agency. Therefore, at most, Section 9(b) allows employees to continue to negotiate as part of a mixed unit if the agency agrees. Because it has not, to date, agreed to such a unit, WAPA cannot be found guilty of an unfair labor practice for refusing to bargain with a mixed unit of supervisory and non-supervisory employees.
 
 III. CONCLUSION
 
 69
 Because we find that the FLRA improperly certified a mixed unit of supervisory and non-supervisory employees, we reverse the FLRA's unfair labor practice decision as "not in accordance with law." 5 U.S.C. Sec. 706(2)(A).
 
 
 70
 REVERSED.
 
 
 
 *
 Honorable David L. Russell, United States District Judge for the Districts of Oklahoma, sitting by designation
 
 
 [1]
 The unit determination in WAPA I was decided solely on the basis of Executive Order 11491 and not on the basis of the Federal Service Labor-Management Relations Statute, which became effective after WAPA filed its representation petition. The FLRA noted that its decision did "not prejudge in any manner either the meaning or application of related provisions in the ... Statute or the result which would have been reached by the Authority if the case had arisen under the Statute rather than the Executive Order." 3 F.L.R.A. at 80
 
 
 [2]
 Prevailing rate employees are a category of federal workers whose wages are not determined by the federal General Schedule. Rather, their wages generally are determined by the wages prevailing in the industry in which they work, pursuant to a wage survey mechanism. Medler v. United States Bureau of Reclamation, 616 F.2d 450, 451-52 (9th Cir.1980)
 
 
 [3]
 Appropriate unit determinations by the Authority are not directly appealable. See 5 U.S.C. Sec. 7123(a)(2). Rather, they are subject to challenge only when a complaint of an unfair labor practice is made based upon the unit determination. Therefore, WAPA could not have obtained judicial review of the FLRA's unit determination until it was found to have committed an unfair labor practice
 
 
 [4]
 The Office of Personnel Management is in charge of enforcing and interpreting the Prevailing Rate Systems Act. See 5 U.S.C. Sec. 5343
 
 
 [5]
 This exclusion is parallel to Section 2(3) of the National Labor Relations Act which excludes from the coverage of the Act "any individual employed as a supervisor." 29 U.S.C. Sec. 152(3)
 
 
 [6]
 Section 7135(a) is almost identical to a savings clause in Executive Order 11491, 3 C.F.R. 861 (1970), which provided:
 This order does not preclude--
 (1) the renewal or continuation of lawful agreements between an agency and a representative of its employees entered into before the effective date of Executive Order No. 10988 (January 17, 1962); or
 (2) the renewal, continuation, or initial according of recognition for units of management officials or supervisors represented by labor organizations which historically or traditionally represent the management officials or supervisors in private industry and which hold exclusive recognition for units of such officials or supervisors in any agency on the date of this Order.
 
 
 [7]
 In fact, when Congress has wanted to allow mixed units, it has done so expressly. For example, 22 U.S.C. Sec. 3701(a)(2), a provision in the Panama Canal Act, provides:
 [A] unit shall be considered to be appropriate notwithstanding the fact that it includes any supervisor if that supervisor's position (or type of position) was, before October 1, 1979, represented before the Panama Canal Company by a labor organization that included employees who were not supervisors.
 
 
 [8]
 We recognize that the Assistant Secretary for Labor-Management Relations reached a contrary conclusion when interpreting Section 24 of Executive Order 11491, which contained savings clauses virtually identical to the ones now set forth in Section 7135(a). In Department of the Interior, Bureau of Reclamation, Yuma Projects Office, A/SLMR No. 1151, 8 A/SLMR 1246, 1248 (1978), the Assistant Secretary, addressing the issue of whether Section 24 preserved mixed units of supervisors and non-supervisors, held:
 [N]oting particularly the history of representation by the IBEW of the employees at issue in a mixed unit, their coverage under a succession of lawful agreements since the late 1940's, and the fact that historically the IBEW has represented similar employees in private industry, I find that the IBEW's unit herein, containing both supervisory and nonsupervisory employees, continues to be viable pursuant to Section 24 of the Order.
 We reject the Assistant Secretary's interpretation of Section 24 for the same reasons that we reject the FLRA's interpretation of Section 7135(a)(2).
 
 
 [9]
 Both Section 704 of the Civil Service Reform Act and 5 U.S.C. Sec. 7135 took effect on October 13, 1978
 
 
 [10]
 The FLRA also argues that in order to preserve the right of negotiation of terms and conditions provided for by Section 704, that statute should be interpreted to mean that the structure under which prevailing rate employees negotiated over wages and terms and conditions of employment should be preserved, i.e., inclusion in mixed bargaining units. We find no support for this argument in the wording of either Section 704 or Section 9(b)
 
 
 [11]
 Similarly, the National Labor Relations Act allows but does not require employers to bargain with labor organizations that include supervisorial employees. 29 U.S.C. Sec. 164(a)
 
 
 [12]
 5 U.S.C. Sec. 7135 reinforces the theme that Congress wanted to make sure that it did not prevent the parties from bargaining over historic subject matters of negotiation, but that it did not intend to cast preexisting contractual rights in stone or to give any party a vested right in any term or condition of a prior contract. Section 7135 states only that nothing in the Federal Service Labor-Management Relations Statute shall "preclude" recognition of historical bargaining units or the renewal or continuation of historical agreements