887 F.2d 172
 133 L.R.R.M. (BNA) 2378
 UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF INDIAN
AFFAIRS, Yakima Agency and the Wapato Irrigation
Project, Petitioners,
v.
FEDERAL LABOR RELATIONS AUTHORITY; Respondent,
National Federation of Federal Employees (NFFE),
Respondent-Intervenor.
 Nos. 88-7077, 88-7159.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 17, 1989.
Decided March 20, 1989.
As Amended Sept. 27, 1989.
 
 Beatrice G. Chester, Washington, D.C., for petitioner/cross-respondent U.S. Dept. of Interior, et al.
 Elsa D. Newman, Washington, D.C., for respondent/cross-petitioner Federal Labor Relations Authority.
 H. Stephan Gordon, Bruce P. Heppen, and Anne L. Morgan, Washington, D.C., for intervenor National Federation of Federal Employees.
 Appeal from a Decision of the Federal Labor Relations Authority.
 Before SNEED and NOONAN, Circuit Judges, and WILSON, District Judge.*
 NOONAN, Circuit Judge:
 
 
 1
 The United States Department of Interior (the Department) petitions for review of a final order of the Federal Labor Relations Authority (the Authority), and the Authority makes a cross application for enforcement of its order. Jurisdiction exists under 5 U.S.C. Sec. 7123(a). The National Federation of Federal Employees, Local 341 (the Union) has also intervened in the case in support of the Authority's determination. We reverse the order of the Authority.
 
 BACKGROUND
 
 2
 The Authority was created by statute in 1978. It is composed of three members, not more than two of whom may be adherents of the same political party, and none of whom may engage in any other business or employment. The members are appointed by the President, with the advice and consent of the Senate. There is a General Counsel, also appointed by the President with the advice and consent of the Senate. 5 U.S.C. Sec. 7104. The first duty prescribed by Congress for the Authority is as follows:
 
 
 3
 The Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter, and except as otherwise provided, shall be responsible for carrying out the purpose of this chapter.
 
 
 4
 5 U.S.C. Sec. 7105. The "chapter" referred to is Chapter 71, "Labor-Management Relations." The Authority has a structure, a status, and a mission of responsibility.
 
 
 5
 The chapter on Labor-Management Relations imposes upon the government agencies it regulates the duty "to bargain in good faith" to the extent "not inconsistent with any federal law or any government-wide rule or regulation." An agency involved in bargaining with an exclusive representative of its employees may allege that the duty to bargain in good faith does not extend to any particular matter. The representative may then appeal this allegation to the Authority. The Authority has the statutory duty to take action upon the appeal. 5 U.S.C. Sec. 7117. The present case involves such an appeal by the Union against an allegation made by the Department as to a matter not subject to bargaining.
 
 
 6
 The Union made a proposal to the Department as to wages to be paid a variety of employees of the Bureau of Indian Affairs at the Yakima Agency and the Wapato Irrigation Project. These employees included caretakers, ditchriders, auto mechanics, heavy duty mechanics, etc. The part of the proposal in contention reads as follows: "No employee shall suffer a reduction in pay as a result of either a change in prevailing rate or through the application of Schedule A." It is this proposal, known colloquially as a "save pay" proviso, that the Department alleges is not negotiable.
 
 
 7
 The interaction of two statutes relating to the pay of federal employees is involved. Congress has created a class of so-called "prevailing rate employees," which includes individuals in a recognized trade or craft and individuals in unskilled, semi-skilled and skilled manual labor occupations. 5 U.S.C. Sec. 5342. It is the policy of Congress that the pay of these employees should "be fixed and adjusted from time to time" in accordance with prevailing rates. Id. Sec. 5341. This policy is clarified by the condition that the rates of pay be maintained "in line with prevailing levels for comparable work within a local wage area" and sufficient "so as to attract and retain qualified prevailing rate employees." Id. A Federal Prevailing Rate Advisory Committee has been created to advise the Office of Personnel Management on the establishment of prevailing rates. Id. Sec. 5347.
 
 
 8
 The statutory scheme for the payment of prevailing wage employees was qualified by the recognition that there were specific groups of blue-collar employees who historically had set their wages through established collective bargaining relationships. For these groups, Congress enacted a savings clause to prevent disruption or modification of existing bargaining relationships. The savings clause, section 9(b) of Public Law 92-392, provided that the changes made by the new law should not be construed to "nullify, curtail or otherwise impair in any way the right of any party to such contract to enter into negotiation after the date of enactment of this Act [August 17, 1972] for the renewal, extension, modification, or improvement of the provisions of such contracts or for the replacement of such contracts with a new contract." 86 Stat. 574 (1972).
 
 
 9
 The savings clause was subsequently modified by the Civil Service Reform Act of 1978, Public Law 95-454. This comprehensive statute (over 100 pages in the Statutes at Large) provides at Sec. 704(a) for the negotiation of the terms and conditions of employment of prevailing rate employees in the following language:
 
 
 10
 Those terms and conditions of employment and other employment benefits with respect to Government prevailing rate employees to whom section 9(b) of Public Law 92-392 applies which were the subject of negotiation in accordance with prevailing rates and practices prior to August 19, 1972, shall be negotiated on and after the date of the enactment of this Act in accordance with the provisions of section 9(b) of Public Law 92-392 without regard to any provision of chapter 71 of title 5, United States Code (as amended by this title), to the extent that any such provision is inconsistent with this paragraph.
 
 
 11
 Section 704(b) goes on to state that negotiation of "pay and pay practices"--one type of the "terms and conditions of employment" referred to in subsection (a)--is exempted from the operation of certain statutes and regulations governing employees whose pay is fixed administratively. (The entire section is printed in the United States Code as a note to 5 U.S.C. Sec. 5343.)
 
 
 12
 The Department has taken the position that the save pay proviso was not a subject of negotiation between it and the Union prior to August 19, 1972 and was not and is not a subject of negotiation in accordance with present prevailing practices in the local area. Hence, the save proviso is non-negotiable in collective bargaining between it and the Union. The Authority in ruling on the Union's appeal declared, "There is nothing in the record in this case to show that a 'save pay' provision has ever been included in a collective bargaining agreement between the parties." The Authority made no finding as to what prevailing practices were in the local area.
 
 
 13
 Despite its apparently negative finding, the Authority sustained the Union's appeal. It declared, "We conclude that the proposal is negotiable because it relates to the same subject matter as previously negotiated agreements." The Authority further declared that although pay practices were to be negotiated in accordance with prevailing practices in the local area, it was not "appropriate or necessary" for the Authority to determine what those prevailing practices were. "Rather," the Authority declared "these determinations are more properly resolved through the negotiated process by which local prevailing practices are surveyed and through subsequent bargaining." The Department appealed to this court.
 
 ANALYSIS
 
 14
 An internal dispute between two parties of the federal establishment are presented to us for resolution. As Congress has conferred jurisdiction upon us to review orders of the Authority, it is our duty to determine whether the Authority is in error. The Authority, citing numerous cases on judicial deference to administrative action, contends that we should defer to its expertise here and find that it has properly determined that the save pay proviso is a negotiable matter. Bureau of Alcohol, Tobacco and Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). The Department, on the other hand, contends that the issue is essentially one of pay for federal workers, a matter not especially within the Authority's expertise and more appropriately governed by decisions of the Comptroller General. The Comptroller General's decisions, the Authority points out, are inconsistent with the Authority's decision in this case. E.g., Grand Coulee Project Office, 60 Comp.Gen. 668, 673-74 (1981).
 
 
 15
 As the statute has specifically conferred upon the Authority the determination of what is negotiable in collective bargaining the Authority is correct in its contention that deference is owed its decision. 5 U.S.C. Sec. 7105(2)(E). Nonetheless, if the Authority has made a determination that is not in accordance with law we must overturn this ruling. In this case the Authority has departed from what the Civil Service Reform Act requires.
 
 
 16
 The savings clause enacted in 1972 did permit negotiation that would lead to "a new contract," replacing the contract in force in 1972. A new contract clearly could contain conditions not present in the old contract. If the savings clause alone stood on the books, the Department's objection to save pay as a new subject would not be well taken.
 
 
 17
 The enactment of section 704 of the Civil Service Reform Act of 1978, however, modified the savings clause. No doubt, the new law embodied a compromise in which each side in a legislative battle got part of what it wanted. The Authority points to language in the House Committee report that section 704 was not intended to change "the scope and substance of the existing collective bargaining relationship between the employees' representatives and the agencies involved." H.R.Rep. 95-1403, 95th Cong., 2nd Sess. 61-62 (1978). The Department, however, points to significantly different language in the Joint Explanatory Statement of the Committee on Conference that reads as follows: "Section 704(d)(1) [of the House Bill] authorizes and requires the agencies to negotiate on any terms and conditions of employment which were the subject of negotiations prior to August 19, 1972, the date of the enactment of Public Law 92-392. Section 704(d)(1) may not be construed to nullify, curtail or otherwise impair the right or duty of any party to negotiate for renewal, extension, modification, or improvements of benefits negotiated." H.R.Conf.Rep. 95-1717, 45th Cong., 2nd Sess. (1978) at 159, U.S.Code Cong. & Admin.News 1978, pp. 2723, 2893. This language substantially curtails the open-endedness of the savings clause, drops any reference to a negotiation of a new contract, and limits negotiation to terms and conditions which had been the subject of negotiations prior to August 19, 1972.
 
 
 18
 The central question is this: When the Civil Service Reform Act Sec. 704(a) says that a matter is negotiable if it has been "the subject of negotiations," does the statute mean that if wages had been negotiated in the past any matter relating to wages is negotiable in the future? If the answer to this question is yes, the Authority would be right and any form of wage increase would be open to bargaining between the Union and the Department.
 
 
 19
 An untutored layman might think that wages were the subject matter in this way and so this result would be appropriate. Congress, however, has not treated the wages of federal employees as a simple uniform topic. A variety of federal wages exist that are specifically treated as separate subjects by Congress, e.g., merit pay, 5 U.S.C. Sec. 5402; Sunday and holiday pay, 5 U.S.C. Sec. 5549; retroactive pay, 5 U.S.C. Sec. 5344. In the House Report on the Civil Service Reform Act an entire section is devoted to "Downgrading and Saved Pay" and save pay in the case of the downgrading of a federal employee is treated as a special topic covered by section 5362 of the Act. H.R.Rep. No. 95-1403, 95th Cong., 2nd Sess. 13 (1978).
 
 
 20
 Given this way of legislating, it is a perversion of the statute to interpret it as saying that since wages were once negotiated, any and all wage increases are open to negotiation in the future. What is critical is the kind of wages that were the subject of previous bargaining. Save pay provisions were not such a subject for these parties. For this reason, the Authority's order was arbitrary and not in accordance with the law.
 
 
 21
 In addition the Authority acted contrary to law in determining the parties were to negotiate what the prevailing rates are. The determination of prevailing rates and practices involves the negotiation of ground rules and methodology for determining prevailing rates and practices. Once these negotiations are concluded and the data obtained, the prevailing rates and practices are a matter of factual inquiry. That is the assumption of the statute creating the Federal Prevailing Rate Advisory Committee, 5 U.S.C. Sec. 5347(e). It is a Pickwickian or Alice in Wonderland idea that what is a factual matter should be negotiated--somewhat like the idea that you negotiate the sum of two and two. It is the job of the Authority to provide leadership, not to give up its role and turn over to bargaining an issue the Authority must determine factually. The Authority has arbitrarily failed to exercise its statutory function of determining what are the prevailing local rates.
 
 
 22
 REVERSED and REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation