960 F.2d 838
 140 L.R.R.M. (BNA) 2129
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1978,
AFL-CIO, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
United States Department of Interior, Bureau of Reclamation,
Respondent-Intervenor.
 No. 90-70388.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1991.
Decided March 31, 1992.
 
 Stanley Lubin, Phoenix, Ariz., for petitioner.
 Richard Zorn, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent.
 Beatrice G. Chester, Atty., Office of the Sol., U.S. Dept. of the Interior, Washington, D.C., for respondent-intervenor.
 Petition for Review of an Order of the Federal Labor Relations Authority.
 Before: HUG, HALL, and O'SCANNLAIN, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 The American Federation of Government Employees ("AFGE" or "the Union") appeals the Federal Labor Relations Authority's ("the FLRA" or "the Authority") determination that the Bureau of Reclamation ("the Bureau") did not commit an unfair labor practice by refusing to bargain over Sunday premium pay. The Bureau has intervened in support of the Authority's decision. We have jurisdiction under 5 U.S.C. § 7123(a) (1988), and we affirm the Authority's decision.
 
 I.
 
 2
 The AFGE has been the exclusive representative of all wage board employees up to and including Foreman 1 at the Boulder Canyon Project, Bureau of Reclamation, located in Boulder City, Nevada ("the Regional Office"). These employees are prevailing rate employees. See 5 U.S.C. § 5342(a)(2) (1988). They have received a 25% premium for regularly-scheduled non-overtime Sunday work since prior to August 19, 1972.
 
 
 3
 On April 2, 1987, the Regional Office notified the Union that it would discontinue paying Sunday premium pay on June 7, 1987. The Regional Office subsequently agreed to delay the change until June 21, 1987. At a meeting on June 10, 1987, the Union argued that Sunday premium pay was subject to substantive bargaining. On July 9, 1987, the Regional Office informed the Union that it would not engage in substantive bargaining. On July 19, 1987, under the direction of the Bureau of Reclamation, the Regional Office stopped paying Sunday premium pay.
 
 
 4
 In response to the Bureau's refusal to negotiate, the Union filed an unfair labor practice charge against the Bureau and the Regional Office. In its original decision, issued October 31, 1988, the FLRA concluded that the Bureau had committed an unfair labor practice by ordering the Regional Office to discontinue Sunday premium pay without negotiations. See Department of the Interior, Bur. of Reclam'n, Washington, D.C., and Dep't of the Interior, Bur. of Reclam'n, Lower Colorado Reg'l Office, Boulder City, Nevada, and Am. Fed'n of Gov't Employees, Local 1978, AFL-CIO, 33 F.L.R.A. No. 82 (1988).
 
 
 5
 The Bureau filed a motion for reconsideration. The FLRA granted the motion, and on June 4, 1990 the FLRA reversed its original decision, holding that the Bureau did not commit an unfair labor practice by refusing to negotiate the termination of Sunday premium pay because Sunday premium pay was not negotiable. See Department of the Interior, Bur. of Reclam'n, Washington, D.C., and Dep't of the Interior, Bur. of Reclam'n, Lower Colorado Reg'l Office, Boulder City, Nevada, and Am. Fed'n of Gov't Employees, Local 1978, AFL-CIO, 36 F.L.R.A. No. 1 (1990).
 
 II.
 
 6
 The Union contends that the Bureau committed an unfair labor practice, in violation of 5 U.S.C. § 7116 (1988), when it refused to negotiate over Sunday premium pay. Under section 7116(a)(5), it is an unfair labor practice for an agency "to refuse to consult or negotiate in good faith with a labor organization as required by this chapter." The central issue, therefore, is whether the Bureau was required to negotiate Sunday premium pay.
 
 
 7
 As a general rule, the pay for most prevailing rate employees is fixed administratively under the Prevailing Rate Systems Act. See 5 U.S.C. § 5343. The pay is not negotiable. Section 9(b) of the Prevailing Rate Systems Act, however, provides the following exception to that rule:
 
 
 8
 The amendments made by this Act ... shall not be construed to--
 
 
 9
 (1) abrogate, modify, or otherwise affect in any way the provisions of any contract in effect on the date of enactment of this Act [Aug. 19, 1972] pertaining to the wages, the terms and conditions of employment, and other employment benefits, or any of the foregoing matters, for Government prevailing rate employees and resulting from negotiations between Government agencies and organizations of Government employees;
 
 
 10
 (2) nullify, curtail, or otherwise impair in any way the right of any party to such contract to enter into negotiations after the date of enactment of this Act [Aug. 19, 1972] for the renewal, extension, modification, or improvement of the provisions of such contract or for the replacement of such contract with a new contract; or
 
 
 11
 (3) nullify, change, or otherwise affect in any way after such date of enactment [Aug. 19, 1972] any agreement, arrangement, or understanding in effect on such date [Aug. 19, 1972] with respect to the various items of subject matter of the negotiations on which any such contract in effect on such date is based or prevent the inclusion of such items of subject matter in connection with the renegotiation of any such contract, or the replacement of such contract with a new contract, after such date.
 
 
 12
 5 U.S.C. § 5343 note (1988) (Labor Contracts Pertaining to Wages, Terms and Conditions of Employment, and Other Employment Benefits).
 
 
 13
 Congress modified section 9(b) in the Civil Service Reform Act of 1978, Public Law 95-454. See 5 U.S.C. § 5343 note (1988) (Negotiating Requirements). Section 704(a) of the Civil Service Reform Act provides for the negotiation of the terms and conditions of employment of prevailing rate employees. It states:
 
 
 14
 Those terms and conditions of employment and other employment benefits with respect to Government prevailing rate employees to whom section 9(b) of Public Law 92-392 ... applies which were the subject of negotiation in accordance with prevailing rates and practices prior to August 19, 1972, shall be negotiated on and after the date of the enactment of this Act [Oct. 13, 1978] in accordance with the provisions of section 9(b)....
 
 
 15
 5 U.S.C. § 5343 note (Negotiating Requirements).
 
 
 16
 Thus, under section 704(a), terms and conditions of employment and other employment benefits must be negotiated if two requirements are met. First, the terms and conditions and other employment benefits must have been the subject of negotiations prior to August 19, 1972. United States Dep't of Interior, Bur. of Indian Affairs, Yakima Agency and the Wapato Irrigation Project v. FLRA, 887 F.2d 172, 175-76 (9th Cir.1989) ("Yakima"). Second, these prior negotiations must have been in accordance with the rates and practices prevailing prior to August 19, 1972. See United States Dep't of the Interior, Bur. of Reclam'n, Rio Grande Project v. FLRA, 908 F.2d 570, 575 (10th Cir.1990) ("Rio Grande"). For purposes of section 704(a), the current prevailing practice in the industry is irrelevant. United States Info. Agency, Voice of Am. v. FLRA, 895 F.2d 1449, 1455 (D.C.Cir.1990) ("VOA").
 
 
 17
 Pay and pay practices are "one type of the 'terms and conditions of employment' referred to in subsection (a)." Yakima, 887 F.2d at 174. Therefore, to be negotiable, pay and pay practices must meet the requirements of section 704(a). In addition to those requirements, however, to be negotiable, pay and pay practices must also meet the requirements of section 704(b). See Rio Grande, 908 F.2d at 576-77. Section 704(b) provides: "The pay and pay practices relating to employees referred to in paragraph (1) of this subsection shall be negotiated in accordance with prevailing rates and pay practices." 5 U.S.C. § 5343 note (Negotiating Requirements). Thus, under section 704(b), a pay practice is not negotiable if nobody in the industry currently engages in the practice. However, "if the pay practice has some place in current industry practice, then the parties must negotiate over the subject." VOA, 895 F.2d at 1455 (emphasis in original). Prevailing rates and practices are questions of fact for the FLRA to determine. Yakima, 887 F.2d at 176.
 
 
 18
 The parties dispute whether Sunday premium pay is a pay practice. The FLRA and the Bureau contend that Sunday premium pay is a pay practice. Therefore, they contend, to be negotiable, Sunday premium pay must be a currently prevailing practice. The Union argues that Sunday premium pay does not have to be a currently prevailing practice to be negotiable because it is not a pay or pay practice.
 
 
 19
 In its decision on reconsideration, the FLRA implicitly determined that Sunday premium pay is a pay practice.[1] The FLRA concluded that "section 704(b) precludes negotiations over matters relating to pay and pay practices if those matters are not among current industry practices." 36 F.L.R.A. No. 1 at 5. The Authority then found that "Sunday premium pay is not 'among the current practices in the industry[ ]' for purposes of Section 704(b)." Id. at 6. Therefore, the Authority held that the Bureau was not required to negotiate Sunday premium pay. Id. Thus, the Authority implicitly determined Sunday premium pay to be a pay practice.
 
 
 20
 We agree with the Authority that Sunday premium pay is a pay practice. Although section 704 does not provide any guidelines for determining when a practice is a pay practice, it seems obvious that Sunday premium pay, a practice which increases a worker's pay by 25%, is a pay practice. See Rio Grande, 908 F.2d at 576.
 
 
 21
 Since Sunday premium pay is a pay practice, and under section 704(b) a pay practice is negotiable only if the practice is a currently prevailing pay practice, Sunday premium pay is not negotiable unless it is a currently prevailing practice. The Union contends that the Authority erred in finding that Sunday premium pay is not currently a prevailing practice. The Union argues that the Authority should not have relied solely upon the pay practices of Southern California Edison ("SCE") and the Los Angeles Department of Water and Power ("LADWP") in determining whether Sunday premium pay is a currently prevailing practice.
 
 
 22
 In Yakima, 887 F.2d at 176, we explained that the "determination of prevailing rates and practices involves the negotiation of ground rules and methodology for determining prevailing rates and practices. Once these negotiations are concluded and the data obtained, the prevailing rates and practices are a matter of factual inquiry." The Authority is responsible for making that factual inquiry. Id.
 
 
 23
 The Union and the Bureau agreed to use the LADWP's and SCE's practices as bases for determining prevailing rates and practices. Neither LADWP nor SCE currently provides Sunday premium pay. The Authority therefore concluded that "Sunday premium pay is not 'among the current practices in the industry[ ]' for purposes of section 704(b)." 36 F.L.R.A. No. 1 at 6. This finding was made in the manner specified in Yakima.
 
 III.
 
 24
 Since Sunday premium pay is a pay practice that is not a currently prevailing pay practice, it is not negotiable. Therefore, we hold that the Bureau did not commit an unfair labor practice when it refused to negotiate Sunday premium pay.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The Union argues that the FLRA should have determined whether Sunday premium pay is a term and condition of employment or a pay practice. Since a pay practice is a type of term and condition of employment, however, a practice may be both a term and condition of employment and a pay practice. Yakima, 887 F.2d at 174