**UNITED STATES INFORMATION AGENCY, Voice of America, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Federation of Federal Employees, Local 1418, Intervenor.**

**No. 88–1898.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 23, 1989.

Decided Feb. 13, 1990.

---

Matthew M. Collette, Attorney, Dept. of Justice, with whom William Kanter, Attorney, Dept. of Justice, Washington, D.C., was on the brief, for petitioner.

Denise Morelli, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Washington, D.C., was on the brief, for respondent.

Alice L. Bodley, with whom H. Stephan Gordon and Anne L. Morgan, Washington, D.C., were on the brief, for intervenor.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Circuit Judge MIKVA concurs in the result.

Concurring opinion filed by Circuit Judge WILLIAMS.

HARRY T. EDWARDS, Circuit Judge:

This case concerns the permissible scope of collective bargaining for "prevailing rate" employees in the federal sector. The United States Information Agency, Voice of America ("Agency") challenges an order of the Federal Labor Relations Authority ("FLRA") requiring the Agency to bargain over the substance of its decision to reduce the preparation and cleanup times for radio technicians. The FLRA concluded that, because the matter had been the subject of negotiations prior to enactment of the Prevailing Rate Systems Act of 1972 ("PRSA"), Pub.L. No. 92–392, 86 Stat. 564 (1972) (codified as amended at 5 U.S.C. §§ 5341–5349 (1988)), preparation and cleanup time was a subject of bargaining pursuant to the "grandfather" provisions of the PRSA. The FLRA thus found that the Agency's failure to negotiate over the substance of its decision constituted an unfair labor practice in violation of section 7116(a)(1) and (5) of the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101–7135 (1988). *See United States Information Agency Voice of America v. National Fed'n of Fed. Employees Local 1418*, 33 F.L.R.A. 549, 549–50 (1988).

The FLRA rejected the Agency's contention that "it cannot be required to bargain over the continuation of preparation and cleanup times unless those practices are current prevailing practices in the broadcast industry," as being inconsistent "with the broad purpose of section 9(b) of the [Prevailing Rate Systems] Act and section 704" of the Civil Service Reform Act of 1978 ("CSRA")—the "grandfather" provisions. *See id.* at 559; PRSA § 9(b), 5 U.S.C. § 5343 note (1988); CSRA § 704, 5 U.S.C. § 5343 note.

We reject the Agency's contention that under section 704 an agency is required to bargain over a term or condition of employment that was negotiated prior to August 19, 1972, only when the union's demand is consistent with current prevailing practices in the industry. We also disagree with the

FLRA's interpretation of section 704, because it fails to distinguish between bargaining over subject matters governed by subsection 704(a)—terms and conditions of employment—and bargaining over subject matters governed by subsection 704(b)—pay and pay practices. Because the bargaining rights afforded by subsection 704(b) are narrower than those afforded by subsection 704(a), we will remand this case for the FLRA to determine whether preparation and cleanup time is a "pay and pay practice[ ]" or, rather, a "term[ ] and condition[ ] of employment" or "other employment benefit[ ]."

## I. BACKGROUND

### A. Statutory Framework

The radio technicians involved in this case are "prevailing rate" employees. *See VOA v. NFFE*, 33 F.L.R.A. at 550. "Prevailing rate employees are a category of federal workers whose wages are not determined by the federal General Schedule. Rather, their wages generally are determined by the wages prevailing in the industry in which they work, pursuant to a wage survey mechanism." *United States Dep't of Energy v. FLRA*, 880 F.2d 1163, 1164 n. 2 (10th Cir.1989). The Prevailing Rate Systems Act establishes a mechanism by which the rates of pay of prevailing rate employees can be "fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates." 5 U.S.C. § 5341. However, in section 9(b) of the PRSA, Congress specifically preserved the rights of parties to collective bargaining agreements in effect on August 19, 1972, to negotiate "with respect to the various items of subject matter of negotiations on which" those .contracts were based. PRSA § 9(b)(3). Similarly, in enacting the Civil Service Reform Act in 1978, Congress again provided for the protection of bargaining rights for prevailing rate employees. *See* CSRA § 704.

Thus, sections 9(b) and 704 serve to "grandfather-in" bargaining rights for prevailing rate employees with respect to subjects that might otherwise be *non-negotiable* "management rights" under 5 U.S.C. § 7106 or *non-negotiable* pay provisions reserved to agency regulation. *Cf. Department of the Navy, Military Sealift Command v. FLRA*, 836 F.2d 1409, 1419 (3d Cir.1988); *Department of the Treasury v. FLRA*, 838 F.2d 1341, 1343 (D.C.Cir. 1988) (*per curiam*) (adopting the reasoning and analysis of *Sealift*). In section 704, however, Congress distinguished between bargaining over terms and conditions of employment and bargaining over pay and pay practices—a distinction not extant in section 9(b).

### B. Factual and Procedural History

It is undisputed that the radio technicians in this case are prevailing rate employees to whom section 9(b) of the Prevailing Rate Systems Act applies. *See VOA v. NFFE*, 33 F.L.R.A. at 555. From about 1965 until October 1986, the Agency allowed the radio technicians fifteen minutes at the beginning of their shifts for preparation or setup time, and fifteen minutes at the end of their shifts for cleanup or breakdown time. *See id.* at 552. During the twenty-two years from 1965 to 1986, the Agency adhered to this practice except in emergencies. *See id.* at 551. The FLRA found that, on the basis of meeting notes of labor-management discussions during 1966 and 1967 and a specific provision concerning preparation and cleanup in a 1971 agreement, the parties had negotiated over preparation and cleanup times prior to August 19, 1972. *See id.* at 556.

In 1986, in an effort to cut costs, the Agency proposed to reduce the preparation and cleanup times to ten and five minutes respectively. The National Federation of Federal Employees, Local 1418 ("Union") maintained that the Agency must bargain concerning the substance of the proposed change in preparation and cleanup times, pursuant to section 704 of the CSRA. *See id.* at 551. The Agency, however, contended that negotiations would interfere with management rights protected by the Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7106, accordingly, the Agency maintained that it would only bargain over the impact and implementation of

the proposed changes. *See* 33 F.L.R.A. at 551–52. Following several communications and meetings between Agency and Union officials concerning the employer's proposals, Agency management implemented the changes on October 26, 1986. *See id.* at 552.

In the wake of the Agency's unilateral implementation of the preparation and cleanup periods, the Union filed an unfair labor practice charge with the FLRA against the Agency. The charge alleged that the Agency's refusal to negotiate over the substance of the proposed changes constituted an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1) and (5).

Affirming the determination of the administrative law judge, the FLRA found for the Union. The FLRA concluded that the Agency is required to bargain over preparation and cleanup time even if the current prevailing practice in the broadcast industry is to allow *no* time for preparation and cleanup. *See VOA v. NFFE*, 33 F.L.R.A. at 559. The FLRA held that, in defining the permissible scope of bargaining for prevailing rate employees in this case, the determinative factor was whether the matter in dispute had been negotiated by the parties prior to August 19, 1972. *See id.* at 561. Without considering whether the proposed subject for negotiation was currently a prevailing practice in the industry, the FLRA thus concluded that the Agency's failure to negotiate over the change in preparation and cleanup time constituted an unfair labor practice.

The Agency petitions for review. The Agency contends that if the subject proposed for bargaining is inconsistent with current prevailing practices in the industry, the issue is not negotiable. Brief for Petitioner at 37. According to the Agency, it need not negotiate over the change in preparation and cleanup time, even though this was a matter of negotiation prior to August 19, 1972, because allotment of preparation and cleanup time (the proposed subject matter of the negotiations) is not consistent with prevailing practices in the radio broadcast industry. *See id.* at 14, 16, 36.

## II. ANALYSIS

Absent completely from the FLRA's decision is any distinction between the scope of the bargaining rights preserved by subsection 704(b) for "pay and pay practices" and those preserved by subsection 704(a) for "terms and conditions of employment." This omission is significant because the bargaining rights preserved for "terms and conditions of employment" is broader than for "pay and pay practices." Because the difference in these two subsections is determinative in the instant case and because the FLRA made no findings as to whether preparation and cleanup time constitutes a term or condition of employment or, rather, a pay or pay practice, we must remand.

### A. Standard of Review

■ This court has made it clear that the FLRA's interpretation of the Prevailing Rate Systems Act is not entitled to deference, because the Act is not the Agency's own organic statute. *Department of the Treasury v. FLRA*, 838 F.2d 1341, 1342 n. * (D.C.Cir.1988) (*per curiam*). In addition, and for the same reason, we agree with the Tenth Circuit that the FLRA's interpretation of section 704 of the Civil Service Reform Act is owed no deference. *See United States Dept. of Energy v. FLRA*, 880 F.2d 1163, 1166 (10th Cir.1989); *see also United States Dep't of Justice v. FLRA*, 709 F.2d 724, 729 n. 21 (D.C.Cir. 1983). Moreover, discerning the meaning of section 704 presents a "pure question of statutory construction." When presented with such a "pure" question the court's "first job is to try to determine congressional intent, using 'traditional tools of statutory construction.' " *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987). Here application of the "traditional tools" shows the FLRA's construction of section 704 to be inconsistent with Congress' intent, and, thus, we may not give effect to that construction.

### B. The Relevance of Current *Prevailing Practices to Negotiability Determinations Under Subsection 704(a)*

■ The Agency argues that subsection 704(a) protects the right of prevailing rate

employees to bargain *only* where the subject of negotiation involves a practice consistent with *current* prevailing practices in the industry. This contention finds absolutely no support in the statute. Subsection 704(a) provides:

> Those *terms and conditions of employment* and other employment benefits with respect to Government prevailing rate employees to whom section 9(b) of Public Law 92–392 applies *which were the subject of negotiation in accordance with prevailing rates and practices* prior to August 19, 1972, *shall be negotiated on and after the date of the enactment of this Act in accordance with the provisions of section 9(b) of Public Law 92–392 without regard to any provision of chapter 71 of title 5,* United States Code (as amended by this title), to the extent that any such provision is inconsistent with this paragraph.

CSRA § 704(a) (emphasis added). Under subsection 704(a), current prevailing practices are of no significance; rather, the critical inquiry is whether the proposed subject for negotiation is a matter that was negotiated by the parties prior to August 19, 1972, the date of enactment of the Prevailing Rate Systems Act.[1]

Under subsection 704(a), "terms and conditions of employment and other employment benefits" with respect to the radio technicians "which were the subject of negotiation in accordance with prevailing rates and practices prior to August 19, 1972, shall be negotiated . . . in accordance with the provisions of section 9(b) of [the PRSA] without regard" to any inconsistent provisions of the Labor Management Relations chapter of the United States Code.

CSRA § 704(a). The phrase "in accordance with prevailing rates and practices" in subsection 704(a) merely defines *which* terms and conditions are subject to bargaining. Those terms and conditions of employment that *were* the subject of negotiations in accordance with prevailing rates and practices prior to August 19, 1972, shall *now* be negotiated in accordance with the provisions of section 9(b) of the Prevailing Rate Systems Act.

Thus, the subject matters negotiable under subsection 704(a) are to be negotiated in accordance with section 9(b) of the Prevailing Rate Systems Act. Section 9(b) provides that the PRSA "shall not be construed to . . . nullify, curtail, or otherwise impair in any way the right of any party to" a "contract in effect on the date of enactment of [the PRSA] pertaining to the wages, the terms and conditions of employment, and other employment benefits . . ., for Government prevailing rate employees and resulting from negotiations between Government agencies and organizations of Government employees" "to enter into negotiations after the date of enactment of this Act for the renewal, extension, modification, or improvement of the provisions of such contract or for the replacement of such contract with a new contract." PRSA § 9(b)(1), (2). In addition, section 9(b) provides that the PRSA shall not be construed to "prevent the inclusion" of subjects of negotiations of contracts in effect on August 19, 1972, "in connection with the renegotiation of any such contract, or the replacement of any such contract with a new contract, after such date." PRSA § 9(b)(3).[2]

---

1. The Agency contends that the language "in accordance with prevailing rates and practices" refers to current prevailing practices. We disagree. The Agency's position is belied by the plain terms of the statute.

2. The full text of section 9(b) reads as follows: The amendments made by this Act *shall not be construed to—*
   (1) abrogate, modify, or otherwise affect in any way the provisions of any contract in effect on the date of enactment of this Act pertaining to the wages, the terms and conditions of employment, and other employment benefits, or any of the foregoing matters, for Government

prevailing rate employees and resulting from negotiations between Government agencies and organizations of Government employees;
   (2) *nullify, curtail, or otherwise impair in any way the right of any party to such contract to enter into negotiations* after the date of enactment of this Act [Aug. 19, 1972] *for the renewal, extension, modification, or improvement of the provisions of such contract or for the replacement of such contract with a new contract;* or
   (3) *nullify, change, or otherwise affect in any way after such date of enactment* [Aug. 19, 1972] *any agreement, arrangement, or understanding in effect on such date with respect to the various items of subject matter of the negotiations* on

Nowhere in section 9(b) or in subsection 704(a) is there language requiring matters to be negotiated in accordance with current prevailing practices. Thus, we find no merit to the Agency's contention that the scope of negotiability under all of section 704 is restricted to subjects for which negotiations can proceed in accordance with current prevailing practices. With respect to subsection 704(a), the FLRA is correct in concluding that it need not consider the prevailing practices in the industry to determine negotiability; it need only determine *which* subjects were negotiated prior to August 19, 1972.

*C. The Relevance of* Current *Prevailing Practices to Negotiability Determinations Under Subsection 704(b)*

■ We disagree, however, with the FLRA's conclusion that the sole "determining factor in deciding the scope of bargaining under section 704[ (b) ] is whether the subject matter of a proposal had been negotiated by the parties prior to August 19, 1972." *VOA v. NFFE*, 33 F.L.R.A. at 561. When the subject for negotiation is *"pay and pay practices,"* rather than "terms and conditions of employment," negotiability may depend on current prevailing practices in the industry.

Subsection 704(b) provides:

The pay and pay practices relating to employees referred to in paragraph (1) of this subsection shall be negotiated in accordance with prevailing rates and pay practices without regard to any provision of—

(A) chapter 71 of title 5, United States Code (as amended by this title), to the extent that any such provision is inconsistent with this paragraph;

(B) subchapter IV of chapter 53 [the Prevailing Rate Systems subchapter] and subchapter V of chapter 55 [the Premium Pay subchapter] of title 5, United States Code; or

(C) any rule, regulation, decision, or order relating to rates of pay or pay practices under subchapter IV of chapter 53 or subchapter V of chapter 55 of title 5, United States Code.

CSRA § 704(b), 5 U.S.C. § 5343 note. In subsection 704(b), "in accordance with prevailing rates and practices" defines the permissible range of outcomes of negotiations—not which subjects may be negotiated.

The House report accompanying the Civil Service Reform Act of 1978 supports this reading of section 704. The House report plainly distinguishes between the rights to bargain guaranteed under subsection 704(a) and those protected by subsection 704(b):

Section 704(d)(1) [now subsection 704(a) ] authorizes and requires the agencies to negotiate on any terms and conditions of employment which were the subject of negotiations prior to August 19, 1972, the date of enactment of [the PRSA]. Section 704(d)(1) may not be construed to nullify, curtail, or otherwise impair the right or duty of any party to negotiate for the renewal, extension, modification, or improvements of benefits negotiated.

Section 704(d)(2) [now subsection 704(b) ] requires the negotiation of pay and pay practices in accordance with prevailing pay and pay practices without regard to chapter 71 (as amended by this conference report), subchapter IV of chapter 53, or subchapter V of chapter 55, of title 5, United States Code, in accordance with prevailing practices in the industry.

H.Rep. No. 1717, 95th Cong., 2d Sess. 159 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2893–2894. Indeed, it is hardly surprising that Congress would provide for a wider scope of bargaining on terms and conditions of employment than on pay and pay practices in a statute that establishes an elaborate mechanism for as-

which any such contract in effect on [August 19, 1972] is based or prevent the inclusion of such items of subject matter in connection with the renegotiation of any such contract, or the re-

placement of such contract with a new contract, after such date.
PRSA § 9(b), 5 U.S.C. § 5343 note (emphasis added).

signing wages in accordance with prevailing rates.

### D. Application

Where a party seeks to bargain over a pay practice that is not currently a practice in the industry, the distinction between the range of permissible outcomes in the negotiation and the scope of negotiable subjects dissolves. For example, if a pay practice is not among the current practices in the industry, the parties may not negotiate over that subject. Thus, in circumstances in which a party seeks to negotiate over a pay practice that is not a current practice in the industry, the "in accordance with prevailing rates and pay practices" clause of section 704(b) functions as a negotiability provision. But if the pay practice has *some* place in current industry practice, then the parties must negotiate over the subject and subsection 704(b) functions as a restriction on the permissible outcome of negotiations.

However, a "term and condition" (not otherwise within the compass of "pay and pay practice") remains negotiable under subsection 704(a) so long as the matter in issue was a subject of bargaining before 1972. In other words, under subsection 704(a), a term or condition remains negotiable even if the matter is not a *current* practice in the industry; under subsection 704(b), however, a pay or pay practice is negotiable only in accordance with current prevailing rates and practices.

In the instant case, the FLRA has yet to determine whether a change in preparation and cleanup time for radio technicians falls within the compass of "pay and pay practices" under section 704(b). This must be done on remand. If the FLRA determines that preparation and cleanup time is a term or condition of employment and not a pay or pay practice, *see* 5 U.S.C. § 7105(a)(2)(E) (1988), then the Agency's proposal is fully negotiable under section 704(a), regardless of the current prevailing practices in the industry. If the FLRA decides that preparation and cleanup time is a "pay practice," however, the parties must negotiate unless the Union has demanded bargaining over a pay practice that finds no support in private industry.

If the parties cannot agree as to whether a demand regarding a pay or pay practice is "in accordance with prevailing rates and pay practices," and hence whether the subject is negotiable, the FLRA must decide the negotiability question pursuant to 5 U.S.C. § 7117(c) (1988), *see, e.g., FLRA v. Office of Personnel Management,* 778 F.2d 844 (D.C.Cir.1985); *see also NLRB v. FLRA,* 834 F.2d 191, 193, 199 (D.C.Cir. 1987), or, as in this case, pursuant to an unfair labor practice charge under section 7116(a)(5). We offer no view at this time as to the parameters of bargaining "in accordance with prevailing rates and pay practices." We recognize that it is easy to hypothesize a number of difficult case scenarios that admit of no easy answer under this statutory provision; however, we think these questions are best left to the expert judgment of the FLRA in the first instance in negotiability or unfair labor practice determinations.

### III. Conclusion

Under subsection 704(b), pay and pay practices may only be negotiated in accordance with currently prevailing rates and pay practices. By contrast, terms and conditions of employment subject to bargaining under subsection 704(a) are negotiable regardless of current industry practices, so long as the matter in dispute was the subject of negotiation prior to August 19, 1972. Because the FLRA failed to distinguish between the bargaining rights under subsections 704(a) and (b), and hence did not determine whether preparation and cleanup time is within the compass of "pay and pay practices," we must remand the case. Should the FLRA conclude that preparation and cleanup time is a term or condition of employment, under subsection 704(a), the parties must bargain over any proposed change. Should the FLRA conclude that the Agency's proposed changes pertain to pay or pay practices, then the Authority will be required to determine whether the Union's demands are in accordance with prevailing pay practices.

*It is so ordered.*

1456

**STEPHEN F. WILLIAMS, Circuit Judge, concurring:**

I join in the opinion of the court but write separately only to resolve a potential ambiguity in the court's references to the Authority's duties under § 704(b). See Maj.Op., Part II.D. Assuming preparation and clean-up time to be "pay practices," I read § 704(b) as requiring the Authority to determine the scope of the "prevailing rates and pay practices" in accordance with which the agency is required to negotiate. Thus if the general custom in private industry is to grant technicians five minutes of each, and the union proposed fifteen, the Authority would be obliged (in the proper procedural setting) not only to find whether the award of *any* such time was a prevailing practice, but also to identify the reach of the practice, here an allowance of five minutes. See *United States Dep't of Interior, Bureau of Indian Affairs v. FLRA*, 870 F.2d 554, 557 (9th Cir.1989). As the court's opinion makes clear, Maj.Op. at 1455, one can imagine many complexities in this determination and we leave their resolution to the Authority's expert judgment.