**570**

UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF REC- LAMATION, RIO GRANDE PROJECT, Petitioner/Cross–Respondent,

v.

FEDERAL LABOR RELATIONS AU- THORITY,
Respondent/Cross–Petitioner.

No. 87–2483.

United States Court of Appeals, Tenth Circuit.

July 16, 1990.

Beatrice G. Chester, Atty., U.S. Dept. of the Interior, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., William Kanter, Atty., Dept. of Justice, Washington D.C., with her on the brief), for petition- er/cross-respondent, U.S. Dept. of the Inte- rior, Bureau of Reclamation, Rio Grande Project.

Pamela P. Johnson, Atty., (Ruth E. Peters, Sol., William E. Persina, Deputy Sol., Washington, D.C., with her on the brief), for respondent/cross-petitioner, Federal Labor Relations Authority.

Before MOORE, ANDERSON and EBEL, Circuit Judges.

EBEL, Circuit Judge.

The United States Department of the Interior, Bureau of Reclamation, Rio Grande Project ("Reclamation"), petitions for review of a final order of the Federal Labor Relations Authority ("the FLRA"), and the FLRA cross-petitions for enforcement of its order. Jurisdiction in this court is based on 5 U.S.C. § 7123(a).

In its order, the FLRA held that a proposal made by the International Brotherhood of Electrical Workers, Local Union No. 611, AFL–CIO ("the IBEW Union"), for the continuation of Sunday premium pay for Reclamation's non-supervisory, hourly operations and maintenance employees, was within Reclamation's duty to bargain. Because we hold that the FLRA misinterpreted the relevant statutes in reaching that conclusion, we reverse and remand.

## I. BACKGROUND

The procedural history and relevant facts underlying this appeal are not in dispute. The IBEW Union represents employees of Reclamation who are members of a bargaining unit, composed of non-supervisory, hourly operations and maintenance employees of the Elephant Butte Dam and Power Plant in New Mexico. These employees are "prevailing rate employees." [1]

Beginning in 1960, the IBEW Union and Reclamation negotiated collective bargaining agreements relating to wage and pay practices. It is undisputed that Sunday premium pay was never a specific subject of bargaining between the IBEW Union and Reclamation. However, Reclamation did pay Sunday premium pay to the prevailing rate employees in the bargaining unit until 1984.

In 1984, the Union and Reclamation entered into negotiations for a new collective bargaining agreement. The IBEW Union proposed that Reclamation consider including the following clause concerning Sunday premium pay in the agreement:

> Any employee whose regular work schedule includes an eight (8) hour period of service, a part or all of which is on Sunday, is entitled to additional pay at the rate of twenty-five percent (25%) of his/her hourly rate of basic pay for each hour of work performed during that eight (8) hour period of service.

*Bureau of Reclamation, Rio Grande Project*, 26 F.L.R.A. No. 105 at 906 (1987). Reclamation declined to negotiate the proposal, maintaining that it first had to be determined whether payment of Sunday premium pay was a prevailing practice among private sector construction employers. A wage survey was conducted, and it was determined that the payment of Sunday premium pay was not a prevailing practice in the area. [2]

Reclamation informed the IBEW Union that it would not conduct negotiations relating to the Sunday premium pay proposal. Reclamation took this position believing that two amendments to the Prevailing Rate Systems Act had prohibited negotiation of any wage or benefit subject with prevailing rate employees unless (1) it was a specific subject of negotiation in accord-

---

**1.** Prevailing rate employees are those federal workers whose wages are determined under the Prevailing Rate Systems Act ("the Act"), 5 U.S.C. §§ 5341–5349. The Act defines a prevailing rate employee as:

an individual employed in or under [all non-exempt executive agencies] in a recognized trade or craft, or other skilled mechanical craft, or in an unskilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a su-

pervisor, in a position having trade, craft, or laboring experience and knowledge as the paramount requirement.
5 U.S.C. § 5342(a)(2).

**2.** It is undisputed that payment of the Sunday premium pay at issue is not a prevailing practice. *See* R. Vol. I at Doc. 1, First Addendum at 2 (letter from counsel for the IBEW Union to the United States Federal Service Impasses Panel dated March 22, 1985).

ance with prevailing practices prior to August 19, 1972, *and* (2) the subject of negotiation was determined by survey to be a "prevailing practice" in the relevant area.

In December 1985, the IBEW Union and Reclamation took the matter to the Federal Services Impasses Panel ("the FSIP"). On May 17, 1985, the FSIP declined jurisdiction, believing it had no authority to hear the dispute until the "negotiability" of the proposal was resolved.

In July 1985, Reclamation informed the Union that payment of Sunday premium pay would be discontinued as of August 1985. The Union filed a negotiability appeal with the FLRA, seeking a determination that Reclamation was obligated to negotiate the proposal for Sunday premium pay under the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101–7135.

The FLRA, interpreting Section 9(b) of the Prevailing Rate Systems Act and Section 704(b) of the Civil Service Reform Act, held that the issue of Sunday premium pay embodied in the IBEW Union's proposal was "negotiable" within the meaning of the Federal Service Labor–Management Statute. The FLRA held that Sunday premium pay had been negotiated prior to August 19, 1972 because "premium pay" generally had been a subject of negotiations prior to that date. The FLRA also ruled that Sunday premium pay did not need to be a "prevailing practice" in order for it to be negotiable. Accordingly, the FLRA concluded that the Union proposal was within Reclamation's duty to bargain.[3]

## II. DISCUSSION

### A. *Standard of Review*

Our standard of review is governed by Section 706 of the Administrative Proce-

dure Act, 5 U.S.C. § 706. *See* 5 U.S.C. § 7123(c). In reviewing the FLRA's decision under Section 706 we are obligated to affirm unless we find the decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

■ The FLRA "is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the [Federal Service Labor–Management Relations Statute] to the complexities' of federal labor relations." *American Federation of Government Employees v. Federal Labor Relations Authority*, 744 F.2d 73, 75 (10th Cir.1984) (quoting *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983)). However, we have recently made clear that the decisions of the FLRA interpreting Section 704 of the Civil Service Reform Act and Section 9(b) of the Prevailing Rate Systems Act are not entitled to any special deference because the FLRA is not charged with interpreting either of those sections. *See United States Dep't of Energy, Western Area Power Admin. v. Federal Labor Relations Authority*, 880 F.2d 1163, 1165–66 (10th Cir.1989). Both of those sections are codified as notes to Section 5343 of the Prevailing Rate Systems Act. *See* 5 U.S.C. § 5343 note. As we explained in *Western Area Power*, "section [704] is not part of the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101–7135, which the FLRA is charged with interpreting." *Western Area*

---

**3.** Before the FLRA, Reclamation also took the position that Section 704 of the Civil Service Reform Act of 1978, set forth as a note to 5 U.S.C. § 5343 in the Prevailing Rate Systems Act, removed prevailing rate employees from the statutory entitlement to Sunday premium pay under 5 U.S.C. § 5544(a). The definition of Sunday premium pay in 5 U.S.C. § 5544(a) is virtually identical to the Union's proposal:

An employee whose pay is fixed and adjusted from time to time in accordance with prevailing rates ... whose regular work schedule

includes an 8–hour period of service a part of which is on Sunday is entitled to additional pay at the rate of 25 percent of his hourly rate of basic pay for each hour of work performed during that 8–hour period of service.

However, because the FLRA specifically stated that it did not decide the issue of whether the employees represented by the Union are entitled to Sunday premium pay under § 5544(a), we do not review that question in this appeal. *See Rio Grande Project*, 26 F.L.R.A. No. 105 at 909.

*Power,* 880 F.2d at 1166.[4] Because the issues here only involve sections 704 and 9(b), and not the Federal Service Labor–Management Relations Statute, we shall not accord the FLRA any special deference in reviewing its decision in this case. *See United States Information Agency v. Federal Labor Relations Authority,* 895 F.2d 1449, 1452 (D.C.Cir.1990).

### B. *Negotiation of Sunday Premium Pay Prior to August 19, 1972*

■ In the proceedings before the FLRA, Reclamation maintained that because Sunday premium pay had not been a specific subject of negotiations with the Union prior to August 19, 1972, the Civil Service Reform Act and the Prevailing Rate Systems Act did not permit it to enter into negotiations on the matter. Section 704(a) of the Civil Service Reform Act of 1978, set forth as a note to 5 U.S.C. § 5343 provides, in pertinent part:

(a) Those terms and conditions of employment and other employment benefits with respect to Government prevailing rate employees to whom section 9(b) of Public Law 92–392 ... applies which were the subject of negotiations in accordance with prevailing rates and practices prior to August 19, 1972, shall be negotiated on and after the date of the enactment of this Act [October 13, 1978] in accordance with the provisions of section 9(b) of Public Law 92–392.

Pub.L. 95–454, § 704(a) (codified at 5 U.S.C. § 5343 note). Section 9(b) of Public Law 92–392 referred to in Section 704 of the Civil Service Reform Act (and also set forth as a note to 5 U.S.C. § 5343), provides, in pertinent part:

The amendments made by this [Prevailing Rate Systems] Act ... shall not be construed to—

(1) abrogate, modify, or otherwise affect in any way the provisions of any *contract in effect on the date of enactment of this Act [August 19, 1972] pertaining to the wages, the terms and conditions of employment, and other employment benefits,* or any of the foregoing matters, for Government prevailing rate employees;

(2) nullify, curtail or otherwise impair in any way the *right of any party to such contract to enter into negotiations* after the date of enactment of this Act [August 19, 1972] for the renewal, extension, modification or improvement of the provisions of such contract or for the replacement of such contract with a new contract;

(3) nullify, change, or otherwise affect in any way after such date of enactment [August 19, 1972] *any agreement, arrangement, or understanding in effect on such date [August 19, 1972]* with respect to the various items of subject matter of the negotiations on which any such contract in effect on such date is based *or prevent the inclusion of such items of subject matter in connection with the renegotiation of any such contract,* or the replacement of such contract with a new contract, after such date.

Pub.L. 92–392, § 9(b) (codified at 5 U.S.C. § 5343 note) (emphasis added).

Consistent with Reclamation's position, the FLRA found that Sunday premium pay had not been a specific subject of negotiations between Reclamation and the Union prior to August 19, 1972. *Rio Grande Project,* 26 F.L.R.A. No. 105 at 908. However, the FLRA went on to reason that negotiations between Reclamation and the IBEW Union about other types of premium pay prior to August 19, 1972, made Sunday premium pay a "negotiable" subject within the meaning of Section 704(a) and Section 9(b).

The FLRA, relying on its earlier decision in *Columbia Power Trades Council and United States Department of Energy, Bonneville Power Administration,* 22 F.L.R.A. No. 100 (1986), held that

section 704 does not limit its protections only to the particular terms of provisions

---

**4.** The Office of Personnel Management is charged with administering and interpreting the provisions of the Prevailing Rate Systems Act. *See* 5 U.S.C. § 5343; *Western Area Power,* 880 F.2d at 1166 n. 4.

which were specifically negotiated by the parties in their collective bargaining agreements prior to August 19, 1972. If a disputed proposal involves subject matters which had previously been negotiated by the parties, those subjects are within the Agency's duty to bargain under section 704. Additionally, parties are not confined merely to the continuation of terms of previously existing agreements. In a new agreement, the parties may change those terms or alter their rights concerning the matters involved. *Rio Grande Project*, 26 F.L.R.A. No. 105 at 909. The FLRA maintains that its construction of Section 704 is supported by the language of Section 9(b) which provides:

> The amendments made by this Act ... shall not be construed to impair in any way the right of any party ... to enter into negotiations ... for the ... *modification*, or improvement of the provisions of such contract.

Pub.L. 92–392, § 9(b) (codified at 5 U.S.C. § 5343 note).

The FLRA argues that because Section 9(b) authorizes "modification" of preexisting contract terms, negotiation of any type of premium pay before August 19, 1972, is sufficient to make mandatory, under Section 704, negotiation of the more specific Sunday premium pay proposal. The FLRA also argues that the legislative history of Sections 9(b) and 704 supports its position that Congress did not intend to prohibit the parties to a prevailing rate employees contract from conducting negotiations on subjects not specifically included in any agreement negotiated prior to August 19, 1972, the effective date of the Prevailing Rate Systems Act.

We disagree with the FLRA's reading of the legislative history. We think that the legislative history makes it clear that Section 704 was intended to "grandfather" collective bargaining agreements between prevailing rate employees and federal employers that were in effect at the time the Civil Service Reform Act was enacted. In other words, the section preserved for future negotiations those pay practices that had previously been the subject of negotia-

tion, but did not create any additional obligations to negotiate. Indeed, the House Conference Report states:

> Section [704] of the House bill provides certain savings clauses for employees principally in agencies under the Department of the Interior and the Department of Energy who have traditionally negotiated contracts in accordance with prevailing rates in the private sector of the economy and who were subject to the savings clauses prescribed in section 9(b) of Public Law 92–392, Enacted August 19, 1972....

H. Conf. Rep. No. 95–1717, 95th Cong., 2d Sess., at 159 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News at 2723, 2893.

To construe Sections 704 and 9(b) in the manner advocated by the FLRA would result in an expansion of Reclamation's duty to bargain contrary to congressional intent. Adoption of the FLRA's position would mean that federal employers that had previously negotiated any one type of premium pay with prevailing rate employees would be required to negotiate all other types of premium pay. Given the conceivable variety of types of premium pay, such an interpretation would require negotiation on a range of subjects never previously contemplated by the bargaining parties. It is unclear what, if any, limitations on the expansion of bargaining obligations would exist under the construction proposed by the FLRA. If viewed broadly enough, almost any subject of negotiations could somehow be connected to one which was previously the subject of negotiations so as to qualify as a "modification" or an "item[ ] of subject matter" previously negotiated. We conclude that the legislative history demonstrates that Congress enacted Sections 9(b) and 704 in order to preserve the status quo, not to expand the scope of the bargaining obligations between federal employers and prevailing rate employees.

Our view is in accordance with that of the Ninth Circuit. *See United States Dept. of the Interior, Bureau of Indian Affairs, Yakima Agency and the Wapato Irrigation Project v. Federal Labor Relations Authority*, 887 F.2d 172 (9th Cir.

1989). The court in *Yakima* interpreted Section 704(a) of the Civil Service Reform Act and concluded that only those specific matters which were "the subject of negotiations" prior to August 19, 1972, remained negotiable under that section. *Id.* at 176. The court reversed a decision of the FLRA which held that prior negotiations between the Department of the Interior and a federal employees' union about wages was sufficient to make a "save pay provision"[5] negotiable under Section 704(a) even though a save pay provision had never been the specific subject of previous negotiations. *Id.*

The court in *Yakima* noted that Congress "has not treated the wages of federal employees as a simple uniform topic. A variety of federal wages exist that are specifically treated as separate subjects by Congress, *e.g.,* merit pay ... Sunday and holiday pay ... [and] retroactive pay." *Id.* The court concluded that "[g]iven this way of legislating, it is a perversion of the statute to interpret it as saying that since wages were once negotiated, any and all wage increases are open to negotiation in the future. What is critical is the kind of wages that were the subject of previous bargaining." *Id.* Because a "save pay provision" was not a specific subject of negotiations prior to August 19, 1972, the Ninth Circuit held that it was not a proper subject for negotiations under Section 704. *Id.*

Like the court in *Yakima*, we conclude that, given the various types of premium pay Congress has defined by statute, it would be a misinterpretation of Section 704(a) to conclude that negotiation of any type of premium pay operated to preserve the negotiability of all others. What is of importance is the exact kind of premium pay that was the subject of previous bargaining. The variety of types of premium pay detailed by Congress demonstrates that Congress does not view "premium pay" as a generic term. Rather, "premium pay" encompasses several specific types of pay above the basic level.

The various types of premium pay are outlined in subchapter V of Chapter 55 to Title 5. Included within the subchapter entitled "Premium Pay" is a single section applicable to prevailing rate employees, 5 U.S.C. § 5544.[6] Under § 5544, there are two distinct types of premium pay available to prevailing rate employees: (1) overtime pay (for work in excess of 8 hours a day or 40 hours a week) and (2) Sunday pay (for each hour worked on a Sunday as part of an eight hour shift). In addition, although it is not included in the subchapter titled "Premium Pay", the Prevailing Rate System Act itself provides for payment of a "night differential" and a differential for unusually severe working conditions or unusually severe hazardous duties (to be established by the Office of Management and Budget). *See* 5 U.S.C. § 5343(c)(4), (f).[7]

■ There is a further flaw in the FLRA's position because Section 704(a) requires more than just a showing that a particular subject was a matter of negotiations between the parties prior to August 19, 1972. It defines the *kind* of negotiations that had to have taken place. The negotiations must have been "in accordance with prevailing rates and practices prior to August 19, 1972." Here, there is no such showing, and indeed the record is

---

5. As the court in *Yakima* explained, a "save pay" provision is the colloquial name for a proposal guaranteeing that no employee will suffer a reduction in pay as a result of either a change in the prevailing rate of pay or the application of a pay schedule. *Id.* at 174.

6. Other sections within the Premium Pay subchapter reveal a plethora of premium pay provisions for non-prevailing rate employees. For example, Section 5545 provides premium pay for night work and for standby status, and Section 5546 establishes premium pay for holiday work.

7. The various types of premium pay are set out solely for the purpose of demonstrating that the way in which Congress has legislated in this area is inconsistent with the interpretation of congressional intent put forth by the FLRA. Congress addressed each premium pay situation individually and specifically rather than lumping all types of premium pay together as one generic subject. We do not express any opinion as to whether the prevailing rate employees in this case are statutorily entitled to Sunday premium pay or to any other type of premium pay. *See supra* note 3.

to the contrary. By admission of the parties, the subject of Sunday premium pay was not specifically negotiated prior to August 19, 1972, because the parties apparently felt that the employees had a *statutory* right to receive Sunday premium pay and thus Reclamation paid the employees Sunday premium pay without regard to whether it was a local prevailing practice.[8] *See* Brief of the FLRA at 11, 26; Brief of Reclamation at 10, 19–20.

In summary, we hold that the requirement of Section 704(a) of negotiations prior to August 19, 1972 is not satisfied by a showing of negotiations concerning other kinds of premium pay. We further hold that negotiations premised on a perceived statutory entitlement to Sunday premium pay do not constitute negotiations in accordance with prevailing practices. Therefore, we reverse the FLRA's ruling that the requirements of Section 704(a) were satisfied in this case.

C. *Sunday Premium Pay as a "Prevailing Pay Practice"*

█ In addition to the requirement in Section 704(a) that a term or condition of employment must have been the subject of negotiations in accordance with prevailing practices prior to August 19, 1972, in order to be negotiable under Section 9(b), Section 704(b) adds the further requirement that if the subject matter of the negotiations pertains to "pay and pay practices," the negotiations *"shall be negotiated in accordance with prevailing rates and pay practices."* Pub.L. 95–454, § 704(b), (codified at 5 U.S.C. § 5343 note) (emphasis added).

In the present case, the parties do not dispute that payment of Sunday premium pay is not a prevailing pay practice in the relevant area in light of a 1984 survey of pay practices conducted by Reclamation. The FLRA stated in its decision below that "[t]he Union acknowledges that Sunday premium pay (1) is not a prevailing practice in the local area under consideration." *Rio Grande Project*, 26 F.L.R.A. No. 105 at 908. Neither the Union nor the FLRA has ever disputed the obvious—that Sunday premium pay is a "pay [or] pay practice[ ] issue." Nevertheless, the FLRA rejected Reclamation's position that Sunday premium pay was not negotiable because it was not a prevailing practice in the local area, concluding that "consistent with the purpose of section 9(b) and section 704 to preserve negotiations over existing benefits, employees in this case, who had historically received Sunday premium pay, may negotiate for continued payment of the premium pay *regardless of whether it is a prevailing practice in the local area." Id.* at 912 (emphasis added).

On appeal, the FLRA initially sought to defend this ruling. However, after the case had been briefed and oral argument had taken place, the Court of Appeals for the D.C. Circuit ruled on this same issue in another case. *See United States Information Agency v. Federal Labor Relations Authority*, 895 F.2d 1449 (D.C.Cir.1990). In *United States Information Agency*, the court held that, if the subject at issue [9] was a "pay practice," then the prevailing rate employees could not negotiate that issue under Section 704(b) unless it was a pre-

---

**8.** The IBEW Union elaborated upon this theme in the proceedings before the FLRA, where it argued that Sunday premium pay had been a specific subject of negotiations because Reclamation and the Union "had agreed that benefits such as Sunday premium pay which had been provided by federal law, would continue in effect." Brief of the FLRA (Respondent/Cross–Applicant), at 11–12. That argument is flawed because an agreement stating that the contract would not interfere with a statutory right under 5 U.S.C. § 5544 does not constitute "negotiating" over the subject of Sunday premium pay "in accordance with prevailing rates and practices."

**9.** The proposal at issue was the United States Information Agency's "decision to reduce the preparation and cleanup times for radio technicians." *Id.* at 1450. Initially, "the Agency allowed the radio technicians fifteen minutes at the beginning of their shifts for preparation or setup time, and fifteen minutes at the end of their shifts for cleanup or breakdown time." *Id.* at 1451. "In 1986, in an effort to cut costs, the Agency proposed to reduce the preparation and cleanup times to ten and five minutes respectively." *Id.*

vailing local practice. The court concluded as follows:

> [I]f a pay practice is not among the current practices in the industry, the parties may not negotiate over that subject. Thus, in circumstances in which a party seeks to negotiate over a pay practice that is not a current practice in the industry, the "in accordance with prevailing rates and pay practices" clause of section 704(b) functions as a negotiability provision.

*Id.* at 1455. In *United States Information Agency*, the D.C. Circuit remanded the case to the FLRA for a determination of whether the subject at issue, cleanup time for radio technicians, was a "pay practice" within the meaning of Section 704(b). *Id.*

In light of the D.C. Circuit's decision in *United States Information Agency*, the FLRA granted a motion for reconsideration of its earlier decision in another case, *Department of the Interior, Bureau of Reclamation, Washington, D.C.*, 33 F.L.R.A. No. 671 (1988). *Department of the Interior, Bureau of Reclamation, Washington, D.C.*, 36 F.L.R.A. No. 1 (1990) (granting motion for reconsideration). The FLRA accepted the D.C. Circuit's interpretation of Section 704(b) put forth in *United States Information Agency* as correct, and changed its position accordingly. The FLRA ruled as follows:

> On reexamination, we agree with [the D.C. Circuit's] interpretation [in *United States Information Agency*] that section 704(b) precludes negotiations over matters relating to pay and pay practices if those practices are not among current industry practices. Accordingly, we adopt that interpretation and will no longer follow previous Authority decisions to the extent they are inconsistent.

*Department of the Interior, Bureau of Reclamation, Washington, D.C.*, 36 F.L.R.A. No. 1, slip op. at 5 (1990). Promptly thereafter, the FLRA notified this court of its change in position. *See* Respondent's Motion for Remand of the Case to the Federal Labor Relations Authority (filed June 12, 1990). In that motion, the FLRA confessed error on this issue and sought to

have the case remanded to it "for further proceedings consistent with the Authority's adoption of the D.C. Circuit's interpretation of section 704 as announced in" *United States Information Agency.*

We agree with the interpretation of Section 704(b) announced by the D.C. Circuit in *United States Information Agency* for the reasons articulated therein. The language of Section 704(b) is clear that it authorizes pay negotiations only in accordance with prevailing rates and pay practices:

> (b) The pay and pay practices relating to employees referred to in paragraph (1) of this subsection *shall be negotiated in accordance with* prevailing rates and pay practices....

Pub.L. 95–454, § 704(b) (codified at 5 U.S.C. § 5343 note) (emphasis added). The same limitation appears in the legislative history. *See* H. Conf. Rep. 95–1717, *reprinted in* 1978 U.S.Code Cong. & Admin. News at 2723, 2893. The statements of Representative Ford who introduced this section during the debate in the House of Representatives further demonstrate that this limitation was intended. *See* 124 Cong.Rec. at 25722 (Aug. 11, 1978); *see also Matter of Grand Coulee Project Office*, 60 Comp.Gen. 668, 673–74 (1981).

Here there is no doubt that the matter of Sunday premium pay is a "pay and pay practice" and that Sunday premium pay is not the local prevailing practice. Accordingly, we reverse the FLRA's decision in this case because it was "not in accordance with law," 5 U.S.C. § 706(2)(A), in ordering Reclamation to negotiate the issue of Sunday premium pay.

### III. CONCLUSION

The FLRA's decision that Sunday premium pay was a subject of negotiations between Reclamation and the Union within the meaning of Section 704(a) is contrary to law. Likewise, the FLRA's decision that the proposal for Sunday premium pay is negotiable even though it is not a prevailing pay practice as required under Section 704(b) is contrary to law. Accordingly, the order and decision of the FLRA is REVERSED. Because there still may be

unresolved issues, particularly pertaining to whether these prevailing rate employees have any statutory entitlement to Sunday premium pay, we GRANT respondent's motion for remand and we REMAND this matter to the Federal Labor Relations Authority for further proceedings not inconsistent with this opinion.